SWISS CLEANERS, INC. *v.* CORNELIUS J. DANAHER, COMMISSIONER OF LABOR.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 8—decided July 28, 1942.

*Arthur T. Keefe* and *Douglas A. Anello,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *Frances A. Pallotti,* attorney general, for the appellee (defendant).

BROWN, J. The plaintiff is a Connecticut corporation. It brought this suit (1) to determine whether

or not, with reference to the services of Nellie C. Connor, claimed to be its president, treasurer, director and principal executive officer, it is amenable to § 850e or § 1318e of the General Statutes, Cumulative Supplement 1939; and (2), if not so amenable, asking an injunction restraining the commissioner of labor and factory inspection from instituting or continuing a prosecution of the plaintiff or any of its officers for violation of those sections on account of any connection of Miss Connor with the plaintiff. The case was tried to the court and the finding, corrected in certain respects, presents the following situation: The plaintiff was organized in 1930 at the instigation of Harry M. Shalett, who was at that time the principal stockholder, president and general manager of the Shalett Cleaning and Dyeing Company, a corporation engaged in the business of cleaning and dyeing clothing. It was his purpose to open a cash and carry store to handle lower priced business than that handled by the Shalett Company. The Swiss Cleaners commenced business with a paid-in capital of $3000, all of which was furnished by Harry M. Shalett, who caused all but two of its shares to be issued to his attorney. One share was issued to Nellie C. Connor, an employee of the Shalett Company, and one share to another person. Upon the organization of the Swiss Cleaners, Miss Connor was elected a director, president and treasurer, and she has been elected to these offices annually since. Her stock certificate, as well as those in the name of Shalett's attorney, was indorsed in blank and remained in the stock book of the company in possession of its attorney. A share of stock stands on record in her name. As president, Miss Connor has presided at meetings of the stockholders and directors and has signed leases negotiated for the company by Shalett. She has signed such tax and other returns as by law require the

signature of the president. She has not performed any duties as treasurer, these duties having been performed by an assistant treasurer who is the secretary of Shalett and an employee of the Shalett Company.

When the plaintiff commenced business, it opened one store in New London. Miss Connor, who was placed in charge thereof and has since been in charge, receives articles to be cleaned and dyed. The garments are not cleaned and dyed by the plaintiff but by the Shalett Company, which retains 65 per cent of the receipts for its services, the balance being retained by the plaintiff. Subsequently, the plaintiff opened three additional stores, each in charge of a girl who receives articles to be cleaned and dyed. These girls are hired by Miss Connor, who fixes their wages and has the power to discharge them. She supervises the other stores and receives such complaints as come in from customers. In case of difficulty, she consults with Shalett, who since the formation of the company has exercised advisory powers towards it. When a girl is employed in either of the other stores, Shalett gives her a share of stock and she is elected a vice president. Miss Connor receives a salary of $20 per week. The girls in charge of the other stores receive $15 per week. The plaintiff has furnished the labor commissioner with a record of the hours and wages paid to the girls at the other three stores but has refused to furnish such information in regard to Miss Connor on the ground that as president and principal executive officer she is exempt. In performing her duties, Miss Connor opened the New London store at 8 o'clock in the morning. She had no definite number of working hours for her employment at the New London store and was privileged to be absent at any time she chose, and at such times the plaintiff provided a substitute without any loss of compensation to her. The stock

purchased by Harry M. Shalett was not placed in his name until 1939. He has never been and is not now an officer of the plaintiff company. The books of the plaintiff are audited annually and a report made to Miss Connor as president.

The trial court concluded that Miss Connor was not a bona fide stockholder and was not the chief executive officer or general manager of the plaintiff but was only nominally president and treasurer, and decided that the plaintiff was not relieved as to her services from compliance with §§ 850e and 1318e of the General Statutes, Cumulative Supplement 1939.

The plaintiff corporation was organized in 1930, and the two legislative acts in question did not become law until 1939. Under these circumstances no claim could be made that it was organized and Miss Connor employed with intent to evade the provisions of these statutes. As far as appears from the finding, the plaintiff was regularly organized and Miss Connor was regularly elected its president and was the owner of a share of its stock. No question of fraud is involved in the case, the only question being whether the statutes in question, or either of them, apply to the plaintiff with reference to the services of Miss Connor.

Section 850e was enacted by the legislature in 1939 as a part of the Minimum Wage Act. The purpose of that act is to enable a minimum wage scale to be adopted and to be put into effect as regards any "sweat shop occupation," defined as "an industry, trade, business or occupation which pays to its employees an unfair and oppressive scale of wage in which persons are gainfully employed." The act provides that, in determining what amounts to a fair wage, the wages paid in the state for work of like or comparable character by employers voluntarily maintaining minimum fair wage standards may be considered. It contains penal provi-

sions directed against any employer or "the officer or agent of any corporation," and among those provisions is one against any employer or such officer who shall pay or agree to pay to any employee wages at a less rate than that established in a minimum fair wage order. The purpose of the act is to protect employees against oppression by their employers in paying them too small a wage. The penal provisions indicate that, as far as the legislative intent is concerned, officers of a corporation are classed with the employer and not with the employee. The compensation paid officers, except where it was definitely based solely upon work done apart from that pertaining to the official capacity of the officer, would be of no value in attempting to determine what is a fair wage for the employees in a particular employment. In *Matter of Bowne* v. *Bowne Co.*, 221 N. Y. 28, 32, 116 N. E. 364, which was a proceeding to obtain workmen's compensation, it was held that the president of a corporation, who was its principal executive officer and stockholder, receiving a salary of $70 per week, who had received stock dividends in the preceding year in the amount of $30,000 and who was injured while casually performing manual labor in assisting other employees of the company in handling lumber, was not "an employee" of the company under the Workmen's Compensation Law of New York. In this case, the court said: "An employee in a broad sense is one who receives salary or wages or other compensation from another, but in common speech the term is usually applied to clerks, laborers, etc., and not to the higher officers of a corporation. . . . In a broad sense the officers of a corporation serve it, but in common speech they are not referred to as its servants or employees." On the other hand, in *Matter of Skouitchi* v. *Chic Cloak & Suit Co.*, 230 N. Y. 296, 301, 130 N. E. 299, which was also a proceeding

under the Workmen's Compensation Law of New York, it was held by the Court of Appeals that a person might hold the title of an executive managing official and at the same time be an employee and perform the work of such, and in that case he would be entitled to compensation based on the wages received by him in his capacity as employee.

An officer whose duties are executive or supervisory, whose hours of work are not regulated or controlled and whose compensation is not dependent upon hours or any other measure of time actually devoted to his duties is without the contemplation of § 850e; but one who, although nominally an officer of a corporation, performs duties and receives compensation on a basis which, apart from his holding of his office, would place him in the category of an employee as generally understood is within the purview of this statute. From the finding it appears that while Miss Connor was president, treasurer and chief executive officer of the plaintiff she regularly performed services at the New London store such as are usually rendered by an employee. She received a weekly wage of $20. It is not stated whether that was all received in her capacity as president and treasurer or in part for the work which she performed as an employee. In the absence of a finding as to what, if any, part of her salary was paid to her for her services as president, treasurer and general manager and what part, if any, for her services in the operation of the store in New London, it is not possible, upon the record before us, to render a declaratory judgment as to whether or not the plaintiff is amenable to § 850e as regards any of her services.

The defendant contends that the court should look through the corporate organization of the plaintiff and regard Miss Connor as an employee of the Shalett Cleaning and Dyeing Company, or Harry M. Shalett.

There are instances in which a court will look through a corporation to the individuals who compose it. *Starr Burying Ground Asso.* v. *North Lane Cemetery Asso.,* 77 Conn. 83, 92, 58 Atl. 467. "The cases where this will be done are those in which the corporation is a mere sham or device to accomplish some ulterior purpose or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock; or where the purpose is to evade some statute or accomplish some fraud or illegal purpose or in some other like situation." *Hoffman Wall Paper Co., Inc.* v. *Hartford,* 114 Conn. 531, 534, 159 Atl. 346. If the court could look through the corporate structure in this case, it would then be the duty of the Shalett corporation, or Shalett, to report the wages paid Miss Connor, rather than that of the plaintiff corporation. In the absence of the Shalett Company and Harry M. Shalett as parties to the action, there could properly be no adjudication of their respective duties in that regard.

Section 1318e is a part of Chapter 279 of the General Statutes. It is a prohibition against the employment of females in mercantile establishments more than a certain number of hours, with a criminal penalty for violation of its provisions. The purpose of this statute is the protection of the health of women employees in such employments. The only function which the commissioner of labor and factory inspection has with reference to the provisions of Chapter 279 is to examine into the employment of minors and women and into the observance of the regulations contained in the chapter, to investigate all complaints of violations and to report all cases of such violations to the prosecuting officer having jurisdiction. The ultimate determination whether or not there shall be a prosecution for violation of the section rests with the

proper prosecuting officer. The complaint alleges that the department of labor has threatened to prosecute other directors of the plaintiff and has caused a warrant to be issued against Harry M. Shalett, a director. The trial court found that the department had caused a warrant to be issued against Shalett for failure of the plaintiff to comply with the demands of the department that a record be kept and filed with the department of the hours of employment of Miss Connor. It is difficult to see how the commissioner is the sole necessary party to a determination as to whether Miss Connor is a female employee of the Shalett Company, or of Shalett, under the provisions of §1318e. Moreover, there is nothing in the record which indicates that Miss Connor has been employed contrary to the provisions of this statute or that the plaintiff intends so to employ her. There is no such controversy presented upon this record as comes within the rules concerning declaratory judgments. Practice Book, § 250 (b); Borchard, Declaratory Judgments (2d. Ed.), p. 1022. It is not within the scope of the Declaratory Judgment Act to require the court to answer questions essentially academic. For these reasons the trial court should not have answered the question concerning § 1318e. It is true that both parties apparently desire an answer to the question concerning the application of the statute to Miss Connor and that neither has raised the issue which we have discussed. However, as it goes to the essential basis of an action under the Declaratory Judgment Act, we do not feel that we can overlook the defect.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.