SHELL OIL COMPANY *v.* RENATO E. RICCIUTI, LABOR COMMISSIONER, ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

278

Argued January 6—decided April 14, 1960

*Ralph C. Dixon* and *Irving Slifkin,* of the New York bar, for the appellant (plaintiff).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellees (named defendant et al.); with him, also, were *Wallace R. Burke,* for the appellee (defendant Ross), and, on the brief,

*Jacob Bresnerkoff,* for the appellee (defendant Spector), and *Eugene J. Dorsi,* for the appellee (defendant Nailor).

MELLITZ, J. The plaintiff, Shell Oil Company, hereinafter called Shell, instituted this action in November, 1956, for a declaratory judgment to determine the status of certain of its employees under the minimum wage law (Rev. 1949, c. 180, as amended; now General Statutes, c. 558, pt. 1) and the authority of the defendant labor commissioner to define by regulation certain terms used in the law. The law expressly excludes from its coverage individuals employed in a bona fide executive or administrative capacity. General Statutes § 31-58 (f), later amended by Public Acts 1959, No. 683, § 1. The employees in question are commission managers of service stations owned by Shell. The trial court held that these managers were not employed in a bona fide executive or administrative capacity, as claimed by Shell, but were employees covered by the law, and the plaintiff has appealed.

Shell is engaged in marketing automotive gasoline and other petroleum products in this state through various means, including the sale at retail at service stations owned by Shell and operated by a manager employed by Shell under a written agreement. Among other provisions, the agreement states that the manager shall devote his full business time to the operation of the station and use his best efforts to promote the sale of Shell products; comply strictly and fully with all of Shell's instructions, rules and regulations, and all federal, state and local laws, ordinances and regulations applicable to the operation of the station; keep such

records and make such reports as Shell may require; employ, and pay all wages and salaries of, such assistants at the station as Shell may require and approve; and discharge any such assistant at Shell's request. The manager, however, "shall have no authority to make any commitments whatever in the name or behalf of Shell." The agreement provides further that it may be terminated at any time by either party on twenty-four hours' notice.

In operating a service station under the agreement, the manager receives gasoline consigned to him by Shell for sale to the public at prices determined by Shell; he receives a commission, fixed in the agreement, for each gallon of gasoline sold. He has the right, on his own account, to sell at the station such other items of merchandise, and perform such services, as Shell approves. His compensation is derived from commissions on gasoline sales, profits from the sale of other merchandise, and receipts from the performance of services connected with the operation of the station. He sets the prices on all products sold other than gasoline, and the charges for the services he renders; but when Shell recommends the prices to be charged for such products and services, its recommendations are generally followed. The manager employs three to twelve men to work with him, the number being determined by him with the concurrence of Shell. Applicants for the jobs are sought out and interviewed by the manager; if they are satisfactory to him, they go to Shell for approval. The court found that Shell determines the hours of operation of each station and the products which are to be displayed for sale, reserves the right to hire and fire all persons employed at the station, and requires the manager to make a detailed monthly report of the opera-

tion of the station. All persons employed at the station, including the manager, are employees of Shell.

During the period here involved, there was in effect, in addition to the statute (now § 31-58[f]) defining "employee" as excluding an individual employed in a bona fide executive, administrative or professional capacity, a regulation promulgated by the labor commissioner which established minimum and overtime wages for persons employed in the mercantile trade. Mandatory Order No. 7B, § 180-9-15 (effective Oct. 1, 1951); Conn. Dept. Regs. § 180-9-15. The regulation required the keeping of certain records, exempted from the overtime provisions of the order persons who qualify as executive, administrative or professional employees, and defined an "executive employee" as follows: "Executive Employee. An employee engaged in a bona fide executive capacity shall mean (1) Any employee (a) who is compensated for his services at a rate not less than $75.00 per week or $325.00 per month; and (b) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof; and (c) who customarily and regularly directs the work of two or more employees therein; and (d) who has the authority to hire or discharge other employees or whose suggestions and recommendations as to hiring or discharging and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (e) who customarily and regularly exercises discretionary powers; or (2) An employee who is compensated for his services at a rate not less than $60.00 per week or $260.00 per month,

who, meeting all of the requirements of b, c, d and e as defined above, does not spend more than 50 per cent of his working time on non-executive duties such as, but not limited to selling, stock work, meat cutting." Shell does not pay overtime wages to a manager, nor does it keep records showing the hours he works. At times managers have earned more than the minimum prescribed in the definition, and at times they have earned less. The labor commissioner charged Shell with violating the wage order by failing to pay the minimum wage to certain managers. After a hearing, he directed Shell to comply with the order. Shell then commenced this action.

The trial court concluded that it was possible for a manager to work in an executive capacity under the contract. It further concluded, however, that the three managers named as defendants in this action did not serve in a bona fide executive capacity during any period when their compensation was less than $75 a week or $325 a month. The contention of Shell is that nowhere in the law is the commissioner given authority to determine the coverage of the law by defining the terms used in the definition section; that a minimum wage requirement is not an element commonly associated with the term "executive employee"; that by incorporating such a requirement in the definition, the commissioner has subjected to overtime regulations employees whom the law itself specifically excludes from coverage; and that the wage order is void so far as its definition of the term "executive employee" extends the coverage of the law to Shell commission managers.

The minimum wage law, like our workmen's compensation and unemployment compensation laws,

should receive a liberal construction as regards beneficiaries so that it may accomplish its purpose. *West* v. *Egan,* 142 Conn. 437, 442, 115 A.2d 322; *Derench* v. *Administrator,* 141 Conn. 321, 324, 106 A.2d 150. In furtherance of that principle, it is essential that exemptions or exclusions be strictly and narrowly construed. *Mitchell* v. *Kentucky Finance Co.,* 359 U.S. 290, 295, 79 S. Ct. 756, 3 L. Ed. 2d 815. The burden rests on the employer to establish that his employees come within an exemption. *Walling* v. *General Industries Co.,* 330 U.S. 545, 548, 67 S. Ct. 883, 91 L. Ed. 1088. Whether particular employees are within the coverage of the law must be determined in each case on its own particular facts. *Delano* v. *Armstrong Rubber Co.,* 136 Conn. 663, 668, 73 A.2d 828, cert. denied, 340 U.S. 840, 71 S. Ct. 28, 95 L. Ed. 616; *Mitchell* v. *Kroger Co.,* 248 F.2d 935, 938. The act necessarily contemplates appropriate administrative regulations to make it operative. Shell does not attack the authority of the commissioner to promulgate regulations. Nor has it raised any question of illegality arising from a failure of the legislature to prescribe adequate standards to guide the commissioner in exercising his power to make regulations. *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586. That contention was advanced and laid to rest in *West* v. *Egan,* supra, 443.

We are concerned here with mandatory order No. 7B, governing minimum and overtime wages in the mercantile trade. The claim is that in this order the commissioner attempted to exercise legislative power by defining the term "bona fide executive . . . capacity" and incorporating in that definition a minimum wage requirement. A consideration of the history of minimum wage legislation and

regulations will be helpful in determining the merits of that claim. The minimum wage law as first enacted in 1933 and rewritten in 1939 (Cum. Sup. 1935, 1939, c. 131a) applied to wages of employees but did not define the term employee. In *Swiss Cleaners, Inc.* v. *Danaher*, 129 Conn. 338, 27 A.2d 806, decided in 1942, the question arose whether a person who was a stockholder and officer of a corporation and also performed the services of an ordinary employee, drawing wages therefor, was within the purview of the minimum wage law. In considering that question, we pointed out (p. 344) that "[a]n officer whose duties are executive or supervisory, whose hours of work are not regulated or controlled and whose compensation is not dependent upon hours or any other measure of time actually devoted to his duties" was not within the contemplation of the law. Following this decision, the commissioner, in regulations accompanying a mandatory wage order affecting the mercantile trade, exempted persons employed in a "bona fide executive . . . capacity" from the mandatory overtime pay requirement and incorporated a wage requirement as an essential qualification for exemption. Administrative Regs. §§ 279-7-3, 279-7-6 (effective Mar. 18, 1946), 14 Conn. L.J., No. 6, pp. 6, 8. The wage requirement was undoubtedly included as an element because of its value as an aid in the enforcement of the law. *Koshland* v. *Helvering*, 298 U.S. 441, 446, 56 S. Ct. 767, 80 L. Ed. 1268.

Mandatory wage order No. 7B was promulgated prior to 1951, though it did not, owing to an injunction, go into effect until October 1, 1951. The legislature, amending the minimum wage law in 1951, defined "employee" for the first time and excluded any individual employed in a bona fide execu-

tive, administrative or professional capacity. Cum. Sup. 1951, § 829b; Cum. Sup. 1955, § 2025d. What are now §§ 4-45 and 4-46 of the General Statutes require the commissioner to file with the secretary of the state regulations promulgated by him. Thereafter, such regulations must be approved by the attorney general and published in the Connecticut Law Journal. Because a public official is presumed to have done his duty unless the contrary appears, order No. 7B must be considered to have been duly filed by the commissioner with the secretary of the state and approved by the attorney general. It was published in the Connecticut Law Journal on October 3, 1950. Conn. Dept. Regs. §§ 180-9-1—180-9-19. It can therefore be presumed that the legislature, in adopting its amendment in 1951, had the order before it. The legislature did not thereafter see fit to exercise its statutory power to disapprove, in whole or in part, mandatory order No. 7B. See General Statutes § 4-49. The conclusion is inescapable that the legislature in 1951 employed the phrase "bona fide executive, administrative or professional capacity" in the light of the definitions of those terms incorporated in the administrative regulations then in force. See Sup. 1949, § 27a.

The prime factor in the determination whether a person is employed in an executive capacity is the nature of his duties. As a rule, however, the compensation of an executive is greater than that of a nonexecutive. It was not unreasonable for the commissioner, in considering the problems of enforcement, to recognize this fact and to include wages as an element of the definition of an executive employee for the purpose of the administration of the law. To be qualified for exclusion from the operation of the law, Shell's commission managers

had to meet all the requirements of the definition. *Delano* v. *Armstrong Rubber Co.*, 136 Conn. 663, 668, 73 A.2d 828, cert. denied, 340 U.S. 840, 71 S. Ct. 28, 95 L. Ed. 616; *Fanelli* v. *United States Gypsum Co.*, 141 F.2d 216, 218. Shell, as has been stated, had the burden of proof. The trial court concluded that Shell had failed to sustain its burden. We are unable to find that the court erred in reaching that conclusion or its further conclusion that mandatory order No. 7B "is valid and applies to the plaintiff in respect to wages paid to its commission managers in Connecticut and work records to be kept in respect thereto."

There is no error.

In this opinion BALDWIN, C. J., KING and SHEA, Js., concurred.

MURPHY, J. (concurring). I agree in the result but not with the means by which it was attained. The minimum wage law prior to 1959 did not bestow upon the commissioner the authority to define by regulation "executive, administrative or professional capacity." [1] Without such authority he usurped legislative power. So much of mandatory order 7B as was held to be applicable to Shell station managers should have been held invalid. Also, the line of demarcation in the order between an exempt and nonexempt executive seems tenuous and capricious. When business is good and the manager earns $75 or more a week, he is a bona fide executive and is not subject to the minimum wage law, but if one of our New England snowstorms so interferes

[1] By Public Acts 1959, No. 683, § 1, the clause in § 31-58 (f) with which we are concerned was amended to read "an individual employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the labor commissioner."

with business that he earns but $74.99 the next week, he loses his status as a bona fide executive though the only difference in the nature of his duties was the lack of exercise for his fingers in ringing up the cash register. Regulations should be expected to at least make sense.

I concur in the result only because the trial court concluded upon the facts that the managers were not employed by Shell in a bona fide executive or administrative capacity. That conclusion had abundant support, not the least item of which was the fact that 90 per cent of their duties consisted of pumping gas, changing oil and doing the other routine work of a gasoline station attendant. I suspect that the other 10 per cent consisted in getting permission from Shell to do the things that a bona fide executive could have done normally upon his own authority.