[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The State of Connecticut, Labor Department, filed a two count complaint on September 28, 1992, against the defendants, America's Cup, and Frank Maratta, president of Waterfront Restaurants, Inc., a partner in America's Cup. The State alleges that the defendants, as employers within the State of Connecticut, failed to pay the minimum and/or overtime wages to approximately seventy employees (hereinafter "complainants"). The State seeks to collect double damages for these unpaid wages pursuant to 31-72.
On December 2, 1992, the State filed a motion for summary judgment with an accompanying memorandum of law. Attached to CT Page 4128 the State's motion for summary judgment is a "Stipulated Statement of Facts In Lieu of Affidavit," dated December 2, 1993, (hereinafter "stipulation") signed by all the parties. The parties stipulate that the defendant America's Cup is a restaurant within the meaning of Labor Department regulations (hereinafter "regulations") 31-62-E1 through E4, and that the complainants were employed by America's Cup as bartenders. The stipulation further states:
 15. The parties agree that if the complainants are "non service employees" within the meaning of Regulation 31-62-E2(d) of the Department of Labor, then the "tip credit" may not be taken and the defendant is liable for the amount in dispute, to the plaintiff.
 16. The parties further agree that if the complainants are "service employees" within the meaning of Regulation 31-62-E2(c) of the Department of Labor, then the "tip credit" may be taken and the defendant is not liable for payment of the amount in dispute.
1. Labor Department Regulations.
General Statutes 31-60(b) requires the adoption of regulations recognizing certain gratuities as part of the minimum wage.[1] This statute states in part,
 The labor commissioner . . . shall make such regulations as may be appropriate to carry out the purposes of this part. Such regulations . . . shall recognize, as part of the minimum fair wage, gratuities in an amount equal to twenty-three per cent of the minimum fair wage per hour for persons employed in the hotel and restaurant industry . . . .[2]
Regulations 31-62-E2(c) and (d), adopted pursuant to31-60, distinguish a "service employee" from a "non-service employee" of a restaurant.
 "Service employee" means any employee whose duties relate solely to the serving of food and/or beverages to patrons seated at tables CT Page 4129 or booths, and to the performance of duties incidental to such service, and who customarily receives gratuities.
 "Non-service employee" means an employee other than a service employee, as herein defined. A non-service employee includes, but is not limited to, countergirls, counterwaitresses, countermen, counterwaiters and those employees serving food or beverage to patrons at tables or booths and who do not customarily receive gratuities as defined above.
(Emphasis added.) Section 31-62-E2(c) and (d). Pursuant to regulations 31-62-E1 et seq., if the complainants are found to be service employees, the defendants are entitled to recognize, as part of the minimum fair wage, gratuities received by the employee. However, if the complainants are determined to be "non-service employees," the complainants are entitled to receive the full minimum fair wage.
Section 31-62-E4 sets forth the rule for determining whether a restaurant employee who performs both service and non-service duties may have gratuities applied as part of the minimum fair wage.
 If an employee performs both service and non-service duties, and the time spent on each is definitely segregated and so recorded, the allowance for gratuities as permitted as part of the minimum fair wage may be applied to the hours worked in the service category. If an employee performs both service and non-service duties and the time spent on each cannot be definitely segregated and so recorded, or is not definitely segregated and so recorded, no allowances for gratuities may be applied as part of the minimum fair wage.
"The minimum wage law . . . should receive a liberal construction as regards beneficiaries so that it may accomplish its purpose." Shell Oil Co. v. Ricciuti, 147 Conn. 277,283, 160 A.2d 257 (1960), citing West v. Egan, 142 Conn. 437,442, 115 A.2d 322 (1955); see Rising Sun Enterprises, Inc. v. Frank Santaguita, Commissioner, Superior Court, CT Page 4130 judicial district of Hartford, Docket No. 132588 (April 6, 1979, Graham, J.). "This applies no less to the rules and regulations adopted by an administrative agency under its delegated authority to implement those laws." Rising Sun Enterprises, Inc. v. Frank Santaguita, Commissioner, supra.
"The legislative policy of the minimum wage law is to establish a wage fairly and reasonably commensurate with the value of a particular service or class of service rendered." West v. Egan, supra, 443. "In furtherance of that principle, it is essential that exemptions or exclusions be strictly and narrowly construed. The burden rests on the employer to establish that his employees come within an exemption. Whether particular employees are within the coverage of the law must be determined in each case on its own particular facts." (Citations omitted.) Shell Oil Co. v. Ricciuti, supra.
2. Attacking the Validity of the Regulations.
The defendants contend that the definitions of "service employee" and "non-service employee" in the regulations create "an arbitrary restriction [that] goes beyond the mandate of the enabling legislation [General Statutes 31-60]." (Defendants' Memorandum in Opposition, December 24, 1993, p. 4.) Specifically, the defendants argue that by arbitrarily differentiating between tipped employees on the basis of the size and shape of the eating platform, the regulations have unfairly and improperly narrowed the legislative intent.
The State opposes, however, the defendants ability to presently attack the validity of the regulations. First, the State contends the defendants have waived the right to object to the validity of the regulations, as a result of paragraphs 15 and 16 of the stipulation. Second, the State asserts that pursuant to General Statutes 31-63, the defendants have not followed the statutorily mandated procedure for a determination of the validity of the regulations.
General Statutes 31-63 states in part:
 Any person in interest in any occupation for which any administrative regulation or a minimum fair wage order has been issued under the provisions of this part [Chapter 558, "Wages"] who is aggrieved by such regulation CT Page 4131 or such order may obtain a review of such regulation or such order in the superior court by filing an appeal pursuant to the provisions of Chapter 54 [Uniform Administrative Procedure Act].
Pursuant to this section, the defendants' challenge to the validity of the regulations, as a violation of the legislative mandate of General Statutes 31-60, is not appropriate at this time.
The defendants have waived the right to object to the validity of the regulations an issue at the present time, given paragraphs 15 and 16 of the stipulation. Accordingly, the dispositive issue before the court necessary to the State's motion for summary judgment is whether the complainants are "service employees" or "non-service employees," as defined by 31-62-E2(c) and (d) of the Labor Department regulations.
3. The Parties' Arguments.
The State contends that the complainants are not "service employees," as defined in the regulations and thus are entitled to receive the full minimum wage. Specifically, the State argues that pursuant to the stipulation, the complainants' employment duties did not relate "solely to the serving of food and/or beverages to patrons seated at tables or booth." Section 31-62-E2(c). Accordingly, the State concludes that, pursuant to 31-62-E2(d), the complainants are non-service employees legally entitled to receive the full minimum wage.
If the regulations are not found to be invalid, the defendants alternatively contend that the complainants, as bartenders, are "service employees," given the intent and mandate of the legislature to allow for a tip credit where gratuities are customarily given. The defendants attack the restrictive application of the requirement of 31-62-E2(c) that "service employees" serve "patrons seated at tables or booths," as opposed to the elongated bars in question. Accordingly, the defendants assert that the definition of "table" should include the bars in question, in that food is regularly served on these bars and the regulations do not specifically exclude such bars while otherwise excluding CT Page 4132 classifications of persons serving at "counters."
4. Analysis.
The material facts in this case are not in dispute. The complainants, employed by the defendants as bartenders, worked in the bar/lounge area and outside patio area of the restaurant. These areas consisted of "long counters (the "bar") behind which the bartenders primarily performed their duties, barstools in front of the bar where customers sat, and chairs and tables setup throughout the area at which customers could sit." (Stipulated Statement of Facts, paragraph 4.) The parties stipulate that the complainants received both an hourly wage and gratuities. (Stipulated Statement of Facts, paragraph 5.)
The duties of the complainants, the crucial element in determining whether they constitute "service employees," are described in paragraph six of the stipulation, as follows:
(a) Bar and Patio setup.
 (b) Preparation of alcohol and non-alcohol beverages and the opening of beverage containers for service to customers.
 (c) Serving of beverages to customers sitting and standing at the bar.
 (d) The taking of food orders from customers seated at the bar.
 (e) The service of food orders to customers seated or standing at the bar.
 (f) Waiting on tables for food and beverage service in the lounge and patio areas, as further noted below, when waitpersons were not available.
(Emphasis added.) The stipulation further states that "[a]ll such food and drink orders were served at the bar, and not at the tables or booths in the lounge and patio areas." (Stipulated Statement of Facts, paragraph 11.) Two or three days a week, usually during week days, lunch time, and the CT Page 4133 winter season, one or more designated bartenders would be responsible for servicing the customers seated at the tables or booths. However, when the bartenders serviced customers seated at the tables or booths, "the time spent by the bartenders waiting at tables was not segregated by the defendant Employer from time spent tending bar. Rather, all time was recorded as one block of time on the employees records, which continue to designate the personnel involved as `bartenders.'" (Stipulated Statement of Facts, paragraph 13.)
The facts, as stipulated by the parties, fail to demonstrate that the complainants are "service employees" within the definition of 31-62-E2(c). The complainants' duties, as set forth above, do not "relate solely to the serving of food and/or beverages to patrons seated at tables or booths and to the performance of duties incidental to such service . . . ." (Emphasis added.)
Furthermore, paragraph thirteen of the stipulation directly implicates regulation 31-62-E4. While the facts do indicate that the complainant performed some "service" duties (see paragraph twelve), the time spent on "service" and "non-service" duties was not definitely segregated and so recorded. Accordingly, pursuant to regulation 31-62-E4, the defendants should not be permitted to pay the complainants less than the full minimum fair wage. This court concludes that the State is entitled to judgment as a matter of law. The motion for summary judgment is granted.
Mary R. Hennessey, Judge