[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 10147
The plaintiff, James P. Butler, Commissioner of Labor, brings this action against the defendants, pursuant to C.G.S. § 31-72, to collect unpaid compensation allegedly due certain claimants and for other relief allowed by the statute. This court first bifurcated the case to determine the central issue of whether or not the claimants were employees of the defendants within the meaning of § 31-71 a to warrant the plaintiff initiating this suit. The court held extended hearings and rendered a decision on November 2, 1999 ruling that the claimants were employees within the meaning of § 31-71a.
Thereafter, commencing on April 15, 2000, the court heard the parties over a series of several trial days on the issues of the amount, if any, of unpaid compensation due each of the claimants, interest on that sum, and whether or not the plaintiff could also prevail on his claim for double damages and reasonable attorney's fees, as provided for in §31-72.
The court finds the following facts. Each of the claimants entered into an agreement with defendant Suburban containing the following significant provisions:
 "7. Independent Contractor's compensation hereunder shall be commissions earned on properties sold or listed by him. No commission shall be deemed to be earned by Independent Contractor until such time as the title to the property sold passes from seller to buyer and commissions are received by the Broker. When such commissions are collected by Broker, they shall be promptly divided between Broker and Independent Contractor in the proportion to which each is entitled. Payment shall be made to Independent Contractor and the gross amount of commissions due, without withholding for federal, state or local income taxes unless Broker is required by applicable laws to withhold."
"14. This agreement . . . shall terminate on December 31, 19__ in which it is executed; provided however this agreement . . . may be terminated by either party at any time upon reasonable written notice given to the other party; . . . . In the event of such termination the rights of the parties to any CT Page 10148 commission which accrued prior to the date of termination shall not be affected by reason of such termination except that Broker shall be entitled to retain a reasonable portion of the Independent Contractor's commission share to cover the cost of closing properties which are the subject of contracts of sale entered into prior to the termination date but not settled until after the termination date."
Suburban had a so called "ticket" policy under which selling or listing agents could agree with another agent to cover for the selling or listing agent for a particular task, such as a pre-closing inspection or appearance at a closing, for which a charge of somewhere between $50 and $100 would be collected from the selling or listing agent.
Mrs. Wall, president and chief executive officer of Suburban, testified that Suburban had a "back charge" policy under which Suburban was entitled to deduct 50% of a commission due an agent if the agent abandoned his file or terminated his employment with Suburban before the closing took place. She testified this policy is stated in the agreement signed by each of the claimants and Suburban, specifically referring to paragraph 14, which provides that Suburban is entitled to "retain a reasonable proportion of the independent contractor's commission" that are the subject of a contract sale entered into prior to the claimants' termination date but not settled until after the termination date.
Several witnesses who were former agents working with Suburban testified that Suburban had the 50% back charge policy and that it was discussed at staff meetings. The claimants herein attended some of those meetings where the policy was expressed.
However, this court finds that the so called policy was applied so erratically as not to be a policy at all. Sometimes Suburban deducted less than 50% of an agent's commission when he or she left the employ before a transaction was completed, such as in the case of claimant Benko in the 88 Oakdale Street, Wethersfield and Lot 4, Brentwood, Windsor transactions; sometimes Suburban deducted more than the 50% of the commission to which an agent was entitled, such as in the case of claimant Alexander in the 222 West Main Street, Plainville transaction; and sometimes Suburban deducted the entire commission, such as in the cases of claimant DeRubertis in the 9 Rosewood Lane, Bloomfield transaction and of claimant Fiore in the 29 Robin Brook Drive, Newington transaction. Obviously, the practice was at the whim of Mary Lou Wall, and she deducted any portion of the commission she chose without any itemization or explanation. Thus, the court concludes that there was no fixed policy at all, but rather the agreement between Suburban and its CT Page 10149 employees applied to the effect that Suburban was entitled to retain areasonable portion of an agent's commission share to cover the costs of closing properties that were the subject of contracts of sale entered into prior to an agent leaving but not settled until after he or she left. Moreover each of the claimants herein testified that they were not informed of such a back charge policy at the time they were employed, and although Suburban tried to impose it upon them at the time they were entitled to commissions, it was not binding upon them.
Because the facts differ as to each claimant's entitlement to compensation, they will be stated separately below.
 Andrew Benko
Claimant Andrew Benko worked for Suburban as a real estate agent from November, 1992 to December, 1994. Prior to his hire and during his employment, he was never informed by Suburban of the 50% back charge policy referred to above. He did split a commission 50/50 with another agent but that was by agreement between the agents.
On October 28, 1994, Benko acquired a listing of a property at 88 Oakdale Street in Wethersfield. He prepared a market analysis of the property for the seller, negotiated and secured the execution of a sales contract on November 17, 1994, obtained the deposit from the buyer, and conducted a home inspection.
On December 20, 1994, Benko left the employ of Suburban. All that remained to complete the transaction was attendance at the closing. The closing took place on December 30, 1994.
Suburban received a commission for the sale of the property in the amount of $2,875. According to the commission schedule of Suburban, Benko was entitled to 40% of that sum or $1,150. Benko, in fact, received $650. Suburban retained $500 as a back charge because Benko had left prior to the closing. Suburban gave Benko no details of the basis for the back charge. Mary Lou Wall testified that in order to complete the closing she had to conduct a pre-closing inspection and she believed she attended the closing. She also claims she had to make phone calls to a bank and to keep the seller calm prior to the closing. However, her testimony on these issues is vague and the court does not believe them.
The court concludes that the back charge of $500 is unjustified and unreasonable for this transaction. The most Suburban is entitled to deduct from Benko's commission is $50 for the pre-inspection closing and $50 for attending the closing itself. As a consequence, the court determines Benko earned and was not paid by Suburban the sum of $400. CT Page 10150
With respect to Lot 4, Brentwood, Windsor, Connecticut, Benko was the selling agent. He secured a contract for the sale of that lot on May 4, 1994. At the time Benko left on December 20, 1994 contingencies of the sale had been met and the buyer had moved into the premises. The sale took place on January 13, 1995; Suburban received a commission of $4,032. Benko was entitled to one-half of that or $2,016; he received $1,766. Suburban retained $250. Mrs. Wall testified that she withheld $250 as aback charge because she had to review the file and go to the closing.
This court concludes the withholding of $250 is unjustified and unreasonable. The most Suburban should have deducted was $50 for attending the closing. As a consequence, Benko is entitled to and was not paid by Suburban $200.
Thus the court finds that Suburban has violated General Statutes §31-72 in failing to pay to Benko $600.
 Frederick Grilli
Frederick Grilli was employed as a real estate agent by Suburban from March, 1994 until October, 1994. He testified that he never heard of the back charge policy of Suburban. He was the selling agent on a condominium at 85 Woodsedge Drive, Newington. He obtained a contract of sale of the property on October 14, 1994 which was finally signed by the seller on October 28, 1994. Mr. Grilli left the employ of Suburban on that day of October 28, 1994. When he left he believed that all that had to be done to complete the transaction was a pre-closing inspection and attendance at the closing. Mary Lou Wall testified that Mr. Grilli had no experience as a real estate agent and after he left, she had to negotiate with the seller and mortgage lender on this property because the purchase price was less than the amount of the mortgage committed. She testified that she did everything to bring the matter to a close including the inspection, negotiating the financing with the bank, attending the closing and pre-closing inspection.
The total commission earned on the transaction was $2,550. Grilli was entitled to one-third of that sum or $765 and was paid $382.50. Suburban withheld 50% of his commission or $382.50 in accordance with its back charge policy. As to this transaction, the services performed by Suburban after Mr. Grilli left were substantial and did significantly effectuate the closing. Consequently, the court concludes that the deduction made by Suburban is reasonable.
Mr. Grilli was also the selling agent for a condominium at 49 CT Page 10151 Cottonwood Drive, Newington. He obtained a contract for sale of that property on October 1, 1994; he spent considerable time developing the buyer and getting him to agree to the purchase; she collected the deposit, arranged the financing and also participated in the termite and house inspection. Grilli left the employ of Suburban on October 28, 1994. He testified that all that was left to do at the time he left was to attend the closing. The commission received by Suburban on that transaction was $1,3075. There was due Grilli $687; he was paid $343.73 and Suburban back charged him $343.77. No itemization was given for the deduction. Mary Lou Wall testified that she thought she did quite a bit in connection with the completion of the transaction but she had no details and could give no specifics as to what she actually did do. The court determines that the withholding of the $343.77 by Suburban was unreasonable and unjustified. The most Suburban was entitled to deduct was $50 for attending the closing. Consequently, the court determines that Suburban violated § 31-72 by failing to pay to Mr. Grilli the sum of $290.77 for this transaction.
 Steven Alexander
Steven Alexander worked for Suburban from December, 1994 until February, 1997. He testified that he was never informed about the back charge policy of Suburban at the time he was hired and first learned of it in court. He further stated that the ticket policy was that an agent performing a specific duty on behalf of another agent was paid the sum of between $50 and $100 and that this was always paid, to his knowledge, to another agent rather than to Mary Lou Wall if she performed the task.
Mr. Alexander was the selling agent on a property at 222 West Main Street, Plainville. He met with the buyer over a six month period and finally secured a contract of sale on January 22, 1997. After the contract of sale all that had to be done was a lead paint inspection, a pre-closing inspection and the closing itself. He left Suburban on February 6, 1997 because he had been abused by defendant Gary Wall, the husband of Mary Lou Wall, while he was in the process of trying to complete the transaction. Mary Lou Wall testified that to consummate the closing there had to be a change of financing because the premises were a multi-family property. Also Wall had to get a commitment from the seller in writing to repair the plumbing and she conducted a pre-closing inspection and attended the closing. The closing occurred on March 1, 1997. The total commission to Suburban was $4,800. Mr. Alexander was entitled to $1,200, was paid $300, and claims the unpaid amount of $900. Mary Lou Wall concedes that paying Mr. Alexander only $300 of a $1,200 commission violated her own 50% back charge policy and that Mr. Alexander is entitled to an additional $300. This court concludes that $600 deduction for the work which Mary Lou did in order to complete this CT Page 10152 transaction is, reasonable and justified, and consequently determines that Suburban violated § 31-72 by failing to pay Mr. Alexander the sum of $300.
 Alexis DeRubertis
Alexis DeRubertis worked for Suburban from June, 1995 until February, 1997. She testified she was not informed about Suburban's back charge policy at the time she was hired.
Ms. DeRubertis was the selling agent on property known as 41 Wynola Street, New Britain, Connecticut. She worked with the buyer, dealt with HUD, and wrote the contract of sale. She also helped to get mortgage financing. At the time Ms. DeRubertis left on February 10, 1997, all that needed to be done with respect to this transaction was the pre-closing inspection and attendance at the closing. The closing took place on March 7, 1997. The total commission paid to Suburban was $4,780, DeRubertis was entitled to $2,390. She was paid $1,890 and Suburban-deducted $500.
Mary Lou Wall was vague about the work that needed to be done in this transaction stating she had to make some trips to the property and help with the financing. She could not itemize the basis for the $500 deduction.
The court finds that the deduction of the $500 is unreasonable and unjustified. Suburban is entitled to $50 for the pre-closing inspection and $50 for attending the closing. Suburban violated § 31-72 in failing to pay DeRubertis the balance of $400.
DeRubertis was the selling agent on property known as 9 Rosewood Lane, Bloomfield. DeRubertis obtained the buyer as a result of a referral from her friend. She spent considerable time with the buyer showing her a number of properties. She signed a contract of sale on February 10, 1997, the day she left the employ of Suburban. She testified that all that needed to be done was a pre-closing inspection and attendance at the closing. The closing took place on March 26, 1997; a total commission was paid to Suburban of $5,302, DeRubertis was entitled to a commission of $2,651 and Suburban paid her nothing.
Mary Lou Wall testified that the property at the time the contract was entered into the property was not habitable. She had to get clearance to rehabilitate the premises and arrange a loan to do the work necessary to put the house in shape. She stated the deal could not have closed in the state the house was at the time the plaintiff left. She had considerable dealings with HUD to effectuate the closing. She also attended the preclosing inspection and the closing. While the facts reveal that CT Page 10153 Suburban did considerable work to achieve the closing, nevertheless, DeRubertis did perform the central role of a selling agent in obtaining the purchaser of the premises. In this transaction Suburban would be entitled to deduct 50% of the commission due DeRubertis, but DeRubertis is entitled to 50% of her commission for the service she rendered. Consequently, this court concludes that Suburban violated § 31-72 by failing to pay DeRubertis $1,325.50.
DeRubertis was the selling agent on property at 1087 Blue Hills Avenue in Bloomfield. She met with the buyer, showing many properties, and eventually had the buyer pre-qualified and approved, and wrote the initial contract of sale. At the time DeRubertis left Suburban on February 10, 1997, she claims what was left to be done was a pre-closing inspection and attendance at the closing. The closing took place on April 11, 1997; Suburban received a commission of $1,250; DeRubertis was entitled to one-half of that commission or $625 but was paid $312.50. Mary Lou Wall testified that she had to renegotiate a new contract with the seller and ultimately she attended the preclosing inspection and the closing. While Mrs. Wall justifies the deduction of $312.50, under her 50% back charge policy, the court finds that that deduction is reasonable and justified in light of the work that had to be done after DeRubertis left Suburban. That DeRubertis' participation in the sale of this property was minimal is supported by the testimony of Shirrell Jackson, the purchaser of the property who testified that Mary Lou Wall renegotiated the sales price down to the appraised value and obtained the financing. Consequently this court finds that Suburban did not violate § 31-72 with respect to this transaction.
 Anita Fiore
Anita Fiore worked for Suburban from November, 1989 to September, 1994. She testified that she was not informed of Suburban's back charge policy at the time she was hired and first learned of it at the time she left Suburban. She was the listing agent on property known as 1-5 Marc Circle in South Windsor, Connecticut and obtained the listing on October 21, 1993. The selling agent effected a contract of sale of the property on July 5, 1994. Ms. Fiore left Suburban on September 7, 1994 and at that time all the inspections had been done and the closing date had been set. All that was needed was for Ms. Fiore to give a bill to the selling agent. The property closed seven days later on September 14, 1994. The total commission paid to Suburban was $2,187.50. Ms. Fiore was entitled to a commission of $875 and she was paid $437.50. Mrs. Wall justified the 50% deduction in accordance with her 50% back charge policy. In this instance the court finds there was absolutely nothing for Suburban to do to complete that transaction and finds that Suburban violated § 31-72
by failing to pay to Ms. Fiore the unpaid amount of $437.50.[1]
CT Page 10154
Ms. Fiore was the listing agent on property known as 59 Dobler Terrace, Wethersfield. She obtained the listing on March 10, 1994. The contract of sale was executed on July 7, 1994. When Ms. Fiore left Suburban on September 7, 1994, the buyer had inspected the property, all the repairs had been done and all that was left was the closing. The closing took place on September 27, 1994. Suburban received a commission of $2,837.50. Ms. Fiore was entitled to $1,135 and received half of that or $567.50. Mrs. Wall justifies the deduction in accordance with her 50% back charge policy. She testified that she had to go to the property before the closing and also attended the closing. The court finds that the reasonable deduction for work done by Suburban on this file after Ms. Fiore left is $100, and that Suburban violated § 31-72 by failing to pay to Mr. Fiore the sum of $467.50.
Ms. Fiore was the selling agent on property known as 60 Club House Drive, Cromwell. She obtained a contract of sale on August 17, 1994. Ms. Fiore agreed with another agent to watch the transaction while she was on vacation and the covering agent modified the contract during that time. Ms. Fiore left Suburban on September 7, 1994 and at that time all that needed to be done was a pre-closing inspection and attendance at the closing. The closing took place on September 26, 1994. Suburban was paid a commission of $2,865. Ms. Fiore was due a commission of $1,147.50 and she was paid half that amount or $573.75. Mrs. Wall claims that she did some work in connection with this transaction but she is totally vague as to the details. She justifies the deduction on the grounds of the 50% back charge policy. The court finds a reasonable and justifiable deduction for the work Suburban did on this transaction after Ms. Fiore left is $100, and Suburban violated § 31-72 by failing to pay Ms. Fiore the sum of $473.75.
Ms. Fiore was the listing agent on property known as 29 Robin Brook Drive, Newington. She obtained the listing on May 4, 1994. The contract of sale of the property was entered into on September 1, 1994. When Ms. Fiore left Suburban on September 7, 1994, the contract had to be monitored and someone had to attend the closing to pick up the commission check. Mrs. Wall testified that an entirely new contract had to be renegotiated because the sales price would not sustain the mortgage commitment. The mortgage had to be rewritten. Wall had to bring the transaction to a completion and arrange for the pre-closing inspection and attend the closing. The closing took place on October 28, 1994. The total commission paid to Suburban was $2,050. Ms. Fiore, as the listing agent was entitled to a share of that commission in the amount of $820 and was not paid any of it. Mrs. Wall justified paying no commission because Ms. Fiore had left before the transaction was completed, despite her purported 50% back charge "policy." CT Page 10155
While Wall did considerable work to complete the transaction, Fiore brought in the listing and for that service is entitled to half her commission or $410.
As a consequence the court finds that Suburban violated § 31-72 in failing to pay Ms. Fiore a commission of $410.
Ms. Fiore was the selling agent on property known as 76 Fleetwood Road, Newington. She obtained a contract of sale on September 6, 1994. She left Suburban the next day. When she left the work to be done included a buyer inspection, which was done by Mrs. Wall, a follow-up on the financing and obtaining a mortgage commitment for which the buyer was well qualified, and attendance at the closing. The closing took place on October 27, 1994. The total commission paid to Suburban was $5,235. Ms. Fiore was entitled to half that or $2,617.50. She was paid half of that or $1,308.78.
Suburban justified deducting half of Ms. Fiore's commission on the basis of its 50% back charge policy. The court finds that Suburban did the significant work of a selling agent to effectuate this closing for which it was entitled to a reasonable deduction of $700. Suburban consequently violated § 31-72 by failing to pay to Ms. Fiore on this transaction $608.72.
At the time of the trial on the issue of liability, the court concentrated on whether or not the claimants were employees within the meaning of § 31-71a. In its decision on that issue, it determined they were employees of Suburban. But the evidence was clear then and in this trial on damages that they were also employees of defendant Mary Lou Wall because she personally had "the ultimate responsibility to . . . pay wages and is the specific cause of the wage violation." Butler v.Hartford Technical Institute, 243 Conn. 454, 463-64 (1997). Thus, the court concludes defendant Mary Lou Wall is liable to plaintiff for failing to pay commissions due the claimants in violation of § 31-72. The court also concludes defendant Gary Wall did not have the authority to make decisions on commissions and is not liable.
Section 31-72 provides that the labor commissioner may "recover twice the full amount of unpaid wages. . . ." The purpose of the statute clearly is to deter employers from withholding the wages to which an employee is entitled by imposing the potential penalty of paying double wages. It is in keeping with the remedial purpose of wage laws and as the Supreme Court held in Shell Oil Company v. Ricciuti, 147 Conn. 277, 283
(1960), such laws should be liberally construed to accomplish their purpose. CT Page 10156
However, in order for the court to make an award of double damages, it must find the employer acted "in bad faith, arbitrarily or unreasonably."Crowther v. Gerber Garment Technology Inc., 8 Conn. App. 254, 265
(1986); Sansone v. Clifford, 219, 217, 229 (1991).
In this case the court finds that Suburban did act arbitrarily and unreasonably in withholding the portion of the commissions to which the claimants were entitled. It applied its own purported 50% back charge policy erratically and arbitrarily, and it made deductions from claimants' commissions without justification. Moreover it gave no details of the deductions made. In several instances it exaggerated the amount of work Suburban did after a claimant left. In other instances, the deductions had no relationship to the amount of work done by Suburban. In still other cases it denied a commission entirely. The court finds that Suburban deliberately deprived the claimants a fair share of the commissions due them, and persistently acted in bad faith. Thus the court concludes that the claimants are entitled to twice the amount of the commissions due them. Moreover, each of them is entitled to interest from the date the commission should have been paid to the claimant at the rate of 12% per annum, calculated on a monthly basis, as provided for in § 31-265.
Section 31-72 also provides that the labor commissioner is entitled to reasonable attorney's fees. Our Supreme Court has held that an award of attorney's fees may be based on the court's general knowledge. Piantedosiv. Florida, 186 Conn. 275, 279 (1982). This was a bifurcated case in which the trial on liability consumed three days and on damages, four days. Attorneys filed extensive briefs on both sides of the issues. The plaintiff's attorney's post trial brief was 51 pages long and his rebuttal brief 31 pages long. This was a complicated, bitterly contested case in. which plaintiff's attorney clearly spent a considerable period of time preparing, writing briefs, and attending trial. Plaintiff asked for attorney's fees of $7,500 and this court finds that amount to be eminently reasonable.
Thus, the court enters judgment for plaintiff and against defendants Suburban and Mary Lou Wall for double damages, calculated as follows:
(1) Benko
(a) Commission
Re: 88 Oakdale Street, Wethersfield $ 400
(b) Commission CT Page 10157
Re: Lot 4 Brentwood, Windsor $ 200
(c) Total of (a) and (b) $ 600
(2) Grilli
(a) Commission re: 85 Woodsedge Drive, Newington $ 0
(b) Commission re: 49 Cottonwood Dr., Newington $ 290.77
(c) Total of (a) and (b) $ 300
(3) Alexander
(a) Commission re: 222 West Main St., Plainville $ 300
(b) Total (a) $ 300
(4) DeRubertis
(a) Commission re: 41 Wynola St., New Britain $ 400
(b) Commission re: 9 Rosewood La., Bloomfield $1,325.50
(c) Commission re: 1087 Blue Hills Ave., Bloomfield $ 0
(d) Total of (a), (b), and (c) $ 1,725.50
(5) Anita Fiore
(a) Commission re: 1-5 Mark Cir., South Windsor $ 437.50
(b) Commission re: 59 Dobler Terrace $ 467.50
(c) Commission re: 60 Clubhouse Dr., Cromwell $ 473.75
(d) Commission re: 29 Robinbrook Dr., Newington $ 410.00
(e) Commission re: 76 Fleetwood Rd., Newington $ 608.72
(f) Total of (a), (b), (c), (d) and (e) $ 2,397.47
Total Commissions due all Claimants $ 5,316.68
Double Damages $10,633.36 CT Page 10158
In addition, the plaintiff is entitled to recover of defendants Suburban and Mary Lou Wall interest on each commission due, at 1% per month, from the date of the closing of each transaction giving rise to the commission to the date of payment, plus attorney's fees at $7,500, plus costs.
Judgment may enter in favor of defendant Gary Wall.
Robert Satter Judge Trial Referee