JAMES P. BUTLER, COMMISSIONER OF LABOR
EX REL. MARJORIE SKIDMORE *v.* HARTFORD
TECHNICAL INSTITUTE, INC., ET AL.
(SC 15745)

Callahan, C. J., and Borden, Norcott, McDonald and Peters, Js.

Argued September 23—officially released December 30, 1997

*Glenn T. Terk*, for the appellant (defendant Robert Meyers).

*Glenn A. Woods*, assistant attorney general, with whom were *Edward Reynolds*, *Judah J. Harris* and *Gary Williams*, assistant attorneys general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The plaintiff, the commissioner of the department of labor, brought this action pursuant to General Statutes § 31-72,[1] on behalf of Marjorie Skidmore against the defendants, Hartford Technical Institute, Inc. (Hartec), and its president, Robert Meyers,

---

[1] General Statutes § 31-72 provides: "Civil action to collect wage claim, fringe benefit claim or arbitration award. When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to

to collect unpaid overtime wages allegedly owed to Skidmore by the defendants. The principal issue in this appeal is whether the trial court properly held that Robert Meyers,[2] as the individual who possessed exclusive authority and responsibility for determining Hartec employees' hours of employment and wages, personally was liable as an "employer" for unpaid overtime wages pursuant to § 31-72. Apart from contesting his personal liability, the defendant also claims that the trial court improperly concluded that: (1) Skidmore was not an exempt employee under General Statutes § 31-58 (f); (2) she was entitled to overtime wages despite her failure to inform her employer of the number of hours she had worked; and (3) she was entitled to double damages. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages, arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

[2] Although both Hartec and Robert Meyers were held liable for Skidmore's unpaid overtime wages, only Robert Meyers has appealed. Hereafter, we refer to Robert Meyers as the defendant.

After a court trial, the court found the following facts. The defendant was the president, treasurer and the person in control of Hartec. His wife, Susan Meyers,[3] was the vice president and secretary. Skidmore was employed as a bookkeeper by Hartec from April 24, 1992 to March 8, 1993. During her employment with Hartec, Skidmore was required to work overtime, which she did and for which she was not paid. In April, 1993, Skidmore filed a claim for unpaid overtime wages with the plaintiff, who, after investigation, concluded that Skidmore was owed wages. Neither Hartec nor the defendant maintained time records for Skidmore. Therefore, the plaintiff used the records that Skidmore maintained to compute the wages due her.

The court concluded that: (1) Skidmore was not an exempt employee under § 31-58 (f)[4] because she was not employed in a bona fide executive, administrative or professional capacity; (2) the defendant expected Skidmore to work overtime and was aware that she did so; (3) Skidmore was entitled to twice her wages pursuant to § 31-72;[5] (4) Hartec was liable as an employer; and (5) the defendant personally was liable because he was the "cause for the withholding of, and the failure and refusal to pay the overtime wages." This appeal followed.

I

The defendant's principal claim is that the trial court improperly interpreted § 31-72 to permit personal liability when Skidmore's employer was Hartec. Specifically,

---

[3] The defendant's wife, Susan Meyers, is not a party to this litigation.

[4] General Statutes § 31-58 (f), which defines "employee" for purposes of, inter alia, the overtime provisions of General Statutes § 31-76b, provides in relevant part: " 'Employee' means any individual employed or permitted to work by an employer but shall not include . . . an individual employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the Labor Commissioner . . . ."

[5] The trial court awarded Skidmore $14,205.20, which was computed as follows. In accordance with § 31-72, Skidmore was entitled to twice her

the defendant claims that: (1) § 31-72 does not impose liability on officers or agents of a corporate employer; and (2) he can not be an "employer" as the term is defined in General Statutes § 31-71a (1) because the employer in this case was a corporation and the categories under the definition of employer are mutually exclusive. The plaintiff argues that the definition of employer in § 31-71a (1) includes "any individual" and that the defendant is liable, not as an officer or agent, but under the facts of this case, as an employer having individual authority to determine Skidmore's hours of employment and payment of wages. We agree with the plaintiff.

The trial court properly reasoned that the defendant personally was liable for the nonpayment of Skidmore's overtime wages pursuant to § 31-72 because "[h]e was the president and treasurer and the person in control of the institute. The evidence at trial clearly indicated that he was solely responsible for all decisions in regard to wages. He was specifically the cause for the withholding of, and the failure and refusal to pay the overtime wages to Skidmore."[6]

Our consideration of whether, if a corporate employer exists, an individual can be considered an "employer" pursuant to § 31-72 is guided by well established principles of statutory construction. " 'Statutory construction is a question of law and therefore our review is plenary.' " *Jupiter Realty Co.* v. *Board of Tax Review*, 242 Conn. 363, 367, 698 A.2d 312 (1997). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). In

unpaid wages of $5287.74, plus interest of $2629.82, plus attorney's fees of $1000. See footnote 1 of this opinion for the text of § 31-72.

[6] The plaintiff does not challenge the rejection by the trial court of the "piercing the corporate veil" and "alter ego" theories, contained in count three of the plaintiff's complaint, as a basis for imposing personal liability on the defendant.

other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin our analysis with a review of the pertinent statutory language. Section 31-72 provides that "[w]hen any *employer* fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ." (Emphasis added.) Section 31-71a (1) defines employer as "any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof . . . ."

The defendant first argues that Skidmore's employer is Hartec and that he personally cannot be liable because § 31-72 does not provide for the collection of unpaid wages against an officer or agent of a corporation. This argument, however, does not respond to the theory of liability upon which the plaintiff relies. Count two of the complaint does not allege that the defendant is liable by virtue of his position as a corporate officer. Rather, the plaintiff argues that the defendant is liable

because he was the person who determined both Skidmore's employment hours and wages and "as such he was the employer."

The defendant claims, however, that by the express terms of § 31-71a (1), once an employer, Hartec in this case, has been identified as having statutory liability, such liability cannot also be imposed upon an individual. The plaintiff does not dispute that Hartec, a corporate entity, was Skidmore's employer. The plaintiff argues, however, that the categories under the definition of employer are not exclusive and that the defendant falls within the definition of employer because one of the statutory terms is "individual." Under the plaintiff's interpretation, the fact that Hartec was Skidmore's employer does not preclude the defendant, as the individual in the corporation with exclusive authority to set Skidmore's hours of employment and wages and whose exercise of that authority was the direct cause of the failure to pay wages, from also being considered an employer for purposes of § 31-72.

The plaintiff further argues that his construction of employer as used in § 31-72 is necessary in order to effectuate the legislature's intent. Specifically, the plaintiff contends that § 31-72 must be read in conjunction with the text of General Statutes § 31-71g,[7] which § 31-72 expressly incorporates by reference.

---

[7] General Statutes § 31-71g provides: "Penalty. Any employer or any officer or agent of an employer or any other person authorized by an employer to pay wages who violates any provision of this part may be: (1) Fined not less than two thousand nor more than five thousand dollars or imprisoned not more than five years or both for each offense if the total amount of all unpaid wages owed to an employee is more than two thousand dollars; (2) fined not less than one thousand nor more than two thousand dollars or imprisoned not more than one year or both for each offense if the total amount of all unpaid wages owed to an employee is more than one thousand dollars but not more than two thousand dollars; (3) fined not less than five hundred nor more than one thousand dollars or imprisoned not more than six months or both for each offense if the total amount of all unpaid wages owed to an employee is more than five hundred but not more than one

We have held that in ascertaining legislative intent, "a statute is to be considered as a whole, with a view toward reconciling its separate parts in order to render an overall reasonable interpretation . . . ." (Citations omitted.) *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 305, 562 A.2d 7 (1989); *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987); *Peck* v. *Jacquemin*, 196 Conn. 53, 63, 491 A.2d 1043 (1985). " '[S]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law.' " *In re Valerie D.*, 223 Conn. 492, 524, 613 A.2d 748 (1992); see *State* v. *Breton*, 235 Conn. 206, 226, 663 A.2d 1026 (1995) (intent of legislature to be found from statutory scheme as whole). Mindful of these principles, we proceed to review § 31-71g.

Section 31-71g is the criminal counterpart of § 31-72 and provides that "[a]ny employer or any officer or agent of an employer or any other person authorized by an employer to pay wages who violates any provision of this part may be" fined or imprisoned or both, with the penalties varying with the amount of wages owed.

The defendant maintains that the plain language of § 31-72 does not authorize the imposition of liability to the same extent as § 31-71g. Although the defendant's argument—that liability in the present case should be confined to Hartec, the corporate employer—has a "superficial textual appeal"; *United Illuminating Co.* v. *New Haven*, supra, 240 Conn. 455; it is unpersuasive in application because it leads to a bizarre result. Under the defendant's interpretation of §§ 31-71a (1), 31-71g and 31-72, an individual could be convicted of a felony under § 31-71g and imprisoned for up to five years for

thousand dollars; or (4) fined not less than two hundred nor more than five hundred dollars or imprisoned not more than three months or both for each offense if the total amount of all unpaid wages owed to an employee is five hundred dollars or less."

violating the wage laws, yet that same individual could not be held liable pursuant to § 31-72 for the amount of unpaid wages merely because of the existence of a corporate employer. Although we agree that "the legislation could have been drafted more clearly so as to make explicit what was only implied"; id., 459; we are persuaded that the legislature could not have intended such an anomalous result. "The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . We consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation. . . . We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Anonymous*, 237 Conn. 501, 514–15, 680 A.2d 956 (1996). We, therefore, agree with the plaintiff that when placed in its statutory context, the term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so.[8]

---

[8] Because we conclude that, for purposes of § 31-72, the determination of whether an individual can be considered an employer where a corporate entity exists depends on the individual's authority to control hours and wages and responsibility for illegally withholding wages, it is unnecessary for us to adopt, as the plaintiff requests, the "economic reality" test used in cases involving the Federal Labor Standards Act to determine if an individual

Moreover, the interpretation of § 31-72 in this manner is consistent with the overall remedial nature of the overtime laws. Our legislature, in promulgating both civil and criminal penalties, recognized the important public policy of ensuring that employees receive wages due them.[9] This court has specifically acknowledged § 31-72 as "a remedial statute" for the collection of wages that "provides penalties in order to deter employers from deferring wage payments once they have accrued." *Shortt* v. *New Milford Police Dept.*, supra, 212 Conn. 309; see *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 696, 651 A.2d 1286 (1995) ("[t]he purpose of § 31-72 is remedial, and therefore it must be given a liberal construction in favor of those whom the legislature intended to benefit"). We have recognized that "a primary purpose [of § 31-72] was to penalize the employers." *Shortt* v. *New Milford Police Dept.*, supra, 309 n.13. Our interpretation of the term employer as used in § 31-72, in contrast to the defendant's narrow construction, effectuates the statutory policies of compensating employees and deterring employers from failing to pay wages.

Accordingly, on the basis of the language of § 31-72, the policy it was designed to implement, and its structural relationship to § 31-71g, we conclude that an individual personally can be liable as an employer pursuant to § 31-72, notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set

---

meets the status of employer. The "economic reality" test addresses areas of operational control that are irrelevant to the effectuation of § 31-72.

[9] "Senator Nancy L. Johnson said in committee hearings, held in 1978 to amend General Statutes § 31-72 to increase the penalties on employers, that the payment of earned wages is a basic gut-level right that should be assured by clear, strong state statutes . . . . Conn. Joint Standing Committee Hearings, Labor, 1978 Sess., pp. 154–55." (Internal quotation marks omitted.) *Shortt* v. *New Milford Police Dept.*, supra, 212 Conn. 309 n.13.

the hours of employment and to pay wages and is the specific cause of the wage violation.

Having established the contours of the definition of employer, we now apply it to the facts in the present case. The trial court expressly found Skidmore performed only work which the defendant and Susan Meyers requested. Skidmore was expected to work overtime and did so. The trial court further found that the defendant was the individual in control of, and solely responsible for, all decisions with regard to wages, and concluded that the defendant "was specifically the *cause* for the withholding of, and the failure and refusal to pay the overtime wages" to Skidmore. (Emphasis added.) The defendant "cannot overturn [these] finding[s] of fact[s] unless [he] can demonstrate that [they are] clearly erroneous. Practice Book § 4061; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 219–22, 435 A.2d 24 (1980)]." *Campisano* v. *Nardi*, 212 Conn. 282, 288, 562 A.2d 1 (1989).

The record amply supports the trial court's findings regarding the defendant's authority over Skidmore's hours of employment and control over the payment of wages. The defendant was the president and treasurer of Hartec. Skidmore testified that she reported directly to the defendant and was closely supervised by him. The defendant told Skidmore, prior to hiring her, that she would be required to work long hours, and possibly some weekends, in order to get the accounting area caught up. On two occasions in June, 1992, the defendant urged Skidmore to stay late to complete projects that were needed the next morning.

Skidmore also testified that the supervisors of Hartec's hourly employees gave those employees' time cards directly to the defendant for his authorization. The time cards could not be processed and, therefore, employees would not be paid, if the cards did not bear

the defendant's initials. Although salaried employees did not have time cards for the defendant to approve, he checked the payroll, which was delivered directly to him in a sealed bag, before distribution. According to Skidmore's testimony, she submitted her overtime hours to Susan Meyers who, at that time, was responsible for completing the payroll sheets.[10] Susan Meyers told Skidmore that she had to discuss the hours with the defendant before including them in the payroll records. Viewed in its entirety, the evidence at trial demonstrates that the trial court's findings that only the defendant could approve wage payments and his refusal to pay overtime wages was the cause of the failure to compensate Skidmore properly were not clearly erroneous.

## II

The defendant next claims that the trial court improperly determined that Skidmore was not employed in a "bona fide administrative capacity" and, therefore, was not exempt from overtime compensation provisions.[11] We disagree.

General Statutes § 31-76c provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Section 31-58 (f) exempts

---

[10] Skidmore later assumed this duty.

[11] Although the defendant alleged in his answer that Skidmore was a nonexempt salaried employee who was employed in a "bona fide executive, administrative and professional capacity," his brief only addresses the administrative capacity exemption. We, therefore, decline to review the executive and professional exemptions because they are not adequately briefed. "Claimed errors not adequately briefed and not fully developed will not be considered by this court. See Practice Book § [4064C]; *Liscio* v. *Liscio*, 204 Conn. 502, 507, 528 A.2d 1143 (1987); *Petrizzo* v. *Commercial Contractors Corporations*, 152 Conn. 491, 496, 208 A.2d 748 (1965)." *State* v. *Tatum*, 219 Conn. 721, 742, 595 A.2d 322 (1991).

from this entitlement to overtime compensation any "individual employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the Labor Commissioner . . . ."[12] In order to be qualified for exclusion, an employee must meet all of the requirements of the exemption. *Shell Oil Co. v. Ricciuti,* 147 Conn. 277, 285–86, 160 A.2d 257 (1960). The burden rests on the employer to establish that the employee comes within the statutory exemption. Id., 283.

The defendant argues that Skidmore was employed in a bona fide administrative capacity according to the criteria established in § 31-60-15 of the Regulations of Connecticut State Agencies. Specifically, the defendant argues that Skidmore qualifies as a bona fide administrative employee under the following description contained in § 31-60-15: " '[E]mployee employed in a bona fide administrative capacity' means any employee: (a) whose primary duty consists of . . . (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers . . . and (b) who customarily and regularly exercises discretion and independent judgment; and (c) . . . (2) who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge . . . ."[13]

The trial court held that Skidmore's employment did not meet the elements set forth in subsections (a) (1), (b) and (c) (2) of § 31-60-15. Specifically, the trial court

---

[12] The definition of employee provided in § 31-58 (f) is used because General Statutes § 31-76b, which provides the definitions used in the overtime pay provisions, states that the term employee as used in those provisions "means employee as defined in section 31-58."

[13] The parties do not dispute the applicability of subsections (d) and (e) of § 31-60-15 and confine their arguments to subsections (a) (1), (b) and (c) (2) of that regulation.

determined that Skidmore did not satisfy the requirements of subsection (a) (1) because "[s]he made no decisions that would impact on the business and had no authority to make policy or to supervise employees," of subsection (b) because her "primary duty did not consist of exercising discretion and independent judgment," and of subsection (c) (2) because she did not perform "under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge . . . ."

The primary factor in the determination of whether a person is employed in a bona fide administrative capacity, and thus exempt from overtime compensation, is the nature of his or her duties. See *Shell Oil Co.* v. *Ricciuti*, supra, 147 Conn. 285 (applying analysis to determination of executive capacity). In examining Skidmore's responsibilities, the trial court specifically found that her "duties were primarily those of a bookkeeper. She handled accounts receivable, accounts payable, payroll and checkbooks. . . . She was closely supervised by both [the defendant] and Susan Meyers and performed only work which they requested. She did not act independently or use independent judgment."

On appeal, the defendant challenges the trial court's factual findings regarding Skidmore's duties. The defendant claims that Skidmore exercised discretion and independent judgment in her dealings with vendors. He characterizes her work as requiring specialized training and knowledge, and as being performed under only general supervision. Finally, the defendant relies heavily on his assertion that Skidmore's previous jobs had all been salaried, exempt positions. " '[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous.' " *E. Udolf,*

*Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 749, 573 A.2d 1211 (1990).

The record supports the trial court's findings. Both Skidmore and Eileen Lewis, the investigator for the department of labor, testified regarding the scope of Skidmore's responsibilities. Lewis stated that based on Skidmore's duties, she was a nonexempt employee, and Skidmore testified that the defendant monitored her progress on her assignments and that she was called into his office for a daily status report; that her involvement with payroll was limited; and that the time cards for the hourly employees were reviewed directly by the defendant, who then gave them to Skidmore to complete the necessary payroll sheets for dispatch to the vendor.

### III

The defendant next contends that, even if we were to assume that Skidmore was a nonexempt employee, the trial court improperly concluded that she was entitled to overtime wages because she was not authorized to work overtime and she failed to report her hours to her employer.

The trial court found that, despite the defendant's testimony to the contrary, "on several occasions [Skidmore] was expected to work overtime and in fact did so." The trial court also found that neither Hartec nor the defendant maintained records of her overtime hours as required by General Statutes § 31-66[14] and § 31-

---

[14] General Statutes § 31-66 provides: "Employers' records. Orders to be posted. Each employer subject to the provisions of this part, unless exempted by regulation issued by the commissioner or as hereinafter provided, shall keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the wages paid by him to, each employee, as required by the applicable regulations issued by the Labor Commissioner, and shall furnish to the commissioner or his authorized representative, upon demand, a sworn statement of the same provided if the place of employment is designed primarily as an establishment for the

60-12[15] of the Regulations of Connecticut State Agencies.

The defendant's claims are not supported by the record. There was evidence that prior to hiring her, the defendant alerted Skidmore to the fact that she would have to work extra hours for a number of weeks. On at least two occasions Skidmore gave Susan Meyers documentation of her hours, only to be told that she would not be paid for them and that the topic was not to be discussed further. At the defendant's request and with his approval, Skidmore stayed late to complete needed projects and worked with Susan Meyers on some of them. We conclude that the trial court properly concluded that the defendant authorized and expected Skidmore to work hours in excess of a forty hour week.

## IV

The defendant's final claim is that the trial court's award of double damages to the plaintiff was improper

housing and use of coin-operated service or vending machines, such records may be kept by the employer in some location approved by the commissioner other than at the place of employment. Such records shall be open to inspection by the commissioner or his authorized representative at any reasonable time. Each employer subject to this part or to a minimum fair wage order shall keep a copy of such order and the regulations issued by the Labor Commissioner posted at the place of employment where it can be read easily by the employees. Employers shall be furnished copies of orders and regulations on request, without charge."

[15] Section 31-60-12 of the Regulations of Connecticut State Agencies provides in pertinent part: "Records. (a) For the purpose of this regulation, 'true and accurate records' means accurate legible records for each employee showing: (1) His name; (2) his home address; (3) the occupation in which he is employed; (4) the total daily and total weekly hours worked, showing the beginning and ending time of each work period, computed to the nearest unit of fifteen minutes; (5) his total hourly, daily or weekly basic wage; (6) his overtime wage as a separate item from his basic wage; (7) additions to or deductions from his wages each pay period; (8) his total wages paid each pay period; (9) such other records as are stipulated in accordance with sections 31-60-1 through 31-60-16; (10) working certificates for minor employees (sixteen to eighteen years). True and accurate records shall be maintained and retained at the place of employment for a period of three years for each employee. . . ."

because the record contained no evidence of bad faith, arbitrariness or unreasonableness. We disagree.

Section 31-72 provides for a discretionary award of double damages to employees who are successful in actions against their employers for wages due. Although the statutory language does not require evidence of bad faith, arbitrariness or unreasonableness,[16] cases interpreting and applying this statute have required such evidence. See *Sansone* v. *Clifford*, 219 Conn. 217, 229, 592 A.2d 931 (1991) ("[i]n an action for wages brought pursuant to General Statutes § 31-72, awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness" [internal quotation marks omitted]).[17]

The defendant's principal claim is that his failure to pay Skidmore for overtime could not have been in bad faith because she did not inform him of her hours and, therefore, he never had the information or opportunity to pay her overtime wages. The trial court's memorandum of decision is unclear as to the basis of the double damages award.[18] On the basis of our review of the record, however, we conclude that there was sufficient

[16] Because we agree with the plaintiff that the record contains evidence of bad faith on the part of the defendant, we need not reach the plaintiff's contention that an award of double damages pursuant to § 31-72 does not require such evidence.

[17] Neither party contends that *Sansone* requires that the trial court make a *specific* finding of bad faith, arbitrariness or unreasonableness in order to award double damages. Rather, both parties agree that an award of double damages can be based on evidence of such conduct contained in the record. Accordingly, in the present case, the parties dispute the sufficiency of the evidence demonstrating bad faith.

[18] The defendant did not request an articulation of the trial court's decision to award the plaintiff double damages. Although it is the " 'responsibility of the appellant to provide an adequate record for review' "; *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 73, 699 A.2d 101 (1997); Practice Book § 4007; we note that the trial court should provide a basis for its exercise of discretion to award double damages.

evidence of bad faith to support the award of double damages. The trial court found that Skidmore was expected to work overtime and did so. Skidmore testified that the defendant made representations to her both before she was hired and during her employment that she would be compensated for her overtime hours. Skidmore provided documentation of her hours to Susan Meyers, who, after discussing it with the defendant, told her that she was not going to be paid for overtime. The defendant's requests of Skidmore to work additional hours, his assurances that she would be paid, coupled with his subsequent denial of payment support the trial court's decision to award double damages.

The judgment is affirmed.

In this opinion the other justices concurred.