[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the Commissioner of Labor, acting pursuant to his statutory authority under Connecticut General Statutes Sections 31-68 and 31-72, seeks to collect unpaid wages on behalf of two of defendant's former employees.
In Count Two of the Amended Complaint of February 21, 1996, the allegation is that a number of heating and cooling businesses controlled by defendant employed Jose Irizarry as a technician at an agreed upon wage of $13.50 per hour. Plaintiff claims that defendant failed and refused to pay Mr. Irizarry $3,638.36 in overtime wages as required by General Statutes Sections 31-60,31-68, 31-78b, 31-76b and 31-76C.
Count Five of the Amended complaint makes similar claims with respect to former employee Louis Vecchito. Plaintiff claims Mr. Vecchito is owed $873.00 in overtime wages.
Plaintiff seeks double damages and attorney's fees pursuant to General Statutes Sections 31-68 and 31-72, and interest pursuant to General Statutes Section 31-265, in addition to amounts of wages alleged to have been unpaid.[1]
Trial was held in this case on June 18, 1998; June 19, 1998; and August 17, 1998. Briefs have been filed.
I have reviewed the full record in reaching the conclusions set out in this decision.
Applicable legal Principles
A brief review of applicable legal principles would be helpful in placing this ruling in context. CT Page 12645
The seminal case concerning an employer's failure to pay overtime compensation is Anderson v. Mr. Clemens Pottery Co.,328 U.S. 680 (1946). In that case, the United States Supreme Court ruled on a suit brought by employees pursuant to the Fair Labor Standards Act. The decision deserves to be quoted at some length. Justice Murphy, writing for the majority, stated as follows, beginning at page 686:
 An employee who brings suit under 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, Page 687, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.
 When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employerCT Page 12646 to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col. L. Rev. 355.
 The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of 11(c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." Story Parchment Co. v. Paterson Co., 282 U.S. 555, 563. It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages. Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 377-379; Palmer v. Connecticut R. Co., 311 U.S. 544, 560-561; Bigelow v. RKO Radio Pictures, 327 U.S. 251, 263-266. (Emphasis added.)
 See also Reich v. Southern New England Telecomm. Corp.,121 F.3d 58 (2d Cir. 1997); Brennan v. Carl Roessler. Inc.,361 F. Sup. 229, 233 (1973) ("The burden to keep accurate time records is on the employer . . . In a case such as this where the employer has utterly failed to keep any records of time worked, the court may make a determination on the issue if there is information available, such as the reasonable and credible estimates of the employees"); Brennan v. Partida, 492 F.2d 707,710 (5th Cir. 1974) (". . . a compliance officer's testimony may be sufficient, if reasonable based upon sound underlying facts, CT Page 12647 to make a prima facie case for the employee . . ."). Likewise, the statutes pursuant to which the Commissioner of Labor proceeds in this case put the burden to maintain records on the defendant. Defendant correctly notes that many of the cases cited by plaintiff were decided by federal courts pursuant to the Federal Labor Standard Act. But in its requirement that the employee maintain records, the federal act and state statutory provisions have similar objectives. See pages 4-5 of Plaintiff's Reply Trial Brief dated October 13, 1998, in particular, Judge Corradino's decision in Canzolino v. United Technologies, 1998 WL 165073 (Conn. Super 1998) (noting that Section 31-76c "has the same ameliorative purposes as the federal Fair Labor Standards Act. . . . It makes sense that certain rules adopted in the federal system should apply to the interpretation of our act.")
With respect to the plaintiff's request for double damages under Section 31-72 our Supreme Court has decided that such an award, a matter of discretion, is inappropriate in the absence of bad faith, arbitrariness or unreasonableness. Butler v. HartfordTechnical Institute, 243 Conn. 454, 470 (1997); Sansone v.Clifford, 219 Conn. 217, 229 (1991) (finding of no bad faith where employee never submitted a bill and did not make written demand for payment of his salary.) In Butler, the Supreme Court upheld an award of double damages, pointing to the fact that the employee had provided supporting documentation to the employer; that the employer had requested the employee to work additional hours with an assurance that she would be paid; and that the employer subsequently failed to make the promised payment.243 Conn. at 471. See also Brooklyn Savings Bank v. O'Neil,324 U.S. 697, 707 (1945).
Pursuant to Sections 31-68 and 31-72, plaintiff also seeks a discretionary award of attorney's fees in the amount of $5,000.
Discussion of the Evidence
I will not attempt to recapitulate the trial testimony in its entirety. Briefly, in summary, the witnesses testified to the following.
Jose A. Irizzary testified that he worked for defendant from November, 1993, until April, 1994, servicing and maintaining equipment. He had no written employment contract, and was paid $13.50 per hour. He testified that on average, he worked 55 hours per week during the heating season. At trial, he testified that CT Page 12648 he had kept track of the number of hours he had worked on a Dunkin' Donuts calendar. which was admitted into evidence as Plaintiff's Exhibit 1. Plaintiff's Exhibit 2 contains a compilation of total hours worked as evidence by the calendar's pages.[2] He conceded that he was not entirely sure what amount he believed he was owed for overtime work, and also that, on occasion, he was paid for more time than he actually worked. Mr. Irizzary also testified that, during the busy season, he started at about 8:00 a.m., working seven days a week, on occasion to as late as 11:00 p.m. He testified that service invoices did not always accurately reflect the time he worked. He did not ask for overtime payments he felt he was owed because he had a new daughter and was afraid of losing his job. He described Mr. McIntosh as having a "bad temper."
Louis Vecchito testified that he worked for defendant from December of 1993 until February of 1994 for $12.00 an hour. He also estimated that he worked, "on average," 55 hours per week, including overtime work every day during the heating season. The service invoices did not accurately reflect the actual number of hours worked, he testified, due to factors such as travel time. He stated frankly that he did not know if he was owed overtime wages, but had recently come to the conclusion that he was owed overtime wages after a representative of the Labor Department had contacted him. He added that he had previously indicated that he did not want to pursue a claim, but had been informed by the investigator that he was owed money. He initially concluded he was owed $1,600.00; then revised that amount down to $873.00. With the exception of what he had been told, he stated, he had no basis to claim money from defendant. Because he trusted defendant, he failed to keep track of hours worked and rates of pay.
Tom Weeks was called by plaintiff as a witness. He did the bookkeeping and accounting for defendant during the relevant time periods, and provided documentation to the plaintiff. The materials he prepared and gave to plaintiff were based on documents, records, and information provided to him by Mr. McIntosh and his wife. His calculations were based solely on invoices.
Plaintiff also called Regina Cavagnaro, a wage and hours investigator with the Labor Department, as a witness. Ms. Cavagnaro testified that she investigated the claims in the case. She went to Mr. McIntosh's place of business three times. The CT Page 12649 first time, she was met by Mrs. McIntosh. The second time, she was refused admission. The third time, she met with Mr. McIntosh. She testified that she requested Mr. McIntosh to produce relevant hour and wage records, as required by law, but that he refused to do so voluntarily. In response to a subpoena, Mr. McIntosh produced several cartons of canceled checks and invoices, but no payroll journals, and wage records were missing. The documents, not properly organized in Ms. Cavagnaro's view, failed to provide a basis to conclude that Mr. Irizzary and Mr. Vecchito had been properly paid overtime. She received a letter from Tom Weeks, Plaintiff's Exhibit 5, which acknowledged that information being provided was possibly inaccurate. As part of her investigation, she spoke with Mr. Irizzary and his wife reviewed the calendar, and arrived at a calculation of amounts due for overtime work performed. Plaintiff's Exhibit 10. She did not speak with Louis Vecchito. who was living in Hawaii. She testified that she spoke with someone, on the phone, who identified himself as Mr. Vecchito's uncle. However, she did attend Mr. Vecchito's deposition, and prepared calculations as to him. Plaintiff's Exhibit 11. Ms. Cavagnaro testified that in her view, defendant's lack of cooperation, denying her access to records, and failure to keep proper records, constituted "bad faith."
Defendant called David Demerchant to testify. A private investigator, Mr. Demerchant testified that Mr. Irizzary had told him that while he and Mr. McIntosh had personal differences, he was not owed any money.
Robert McIntosh testified. A self-employed heating technician, he conceded that at relevant time periods, his cash flow was weak, no bank would extend him a line of credit, and that there were times he could not pay the overtime when it was due, but that he would make it up. Mr. McIntosh conceded that he did not keep proper time records because he had been unaware of the legal requirement to do so. He testified that when Ms. Cavagnaro came to his house, she left a card saying he could be fined $150.00 per day for each day he failed to produce records. He said that he did not have all of the required records, became nervous, and called a lawyer. He also received a letter concerning possible prosecution. He noted that he had paid a fine for not keeping the proper records.
The facts of this case place into sharp relief the competing interests involved. On the one hand, employers — even those who have concededly failed to keep adequate records — have CT Page 12650 a right to be concerned that employees not pursue unsupported or inflated claims. Defendant argues that in this case, both Mr. Irizzary and Mr. Vecchito did not assert claims until the state became involved and prompted them to do so. As Anderson makes unmistakably clear, however, an employer who has received the services of an employee, and failed to properly document it, may not benefit as a consequence of his own failure to keep adequate records, or an employee's ignorance of his or her rights. Moreover, it is precisely the job of plaintiff to protect the interests of employees whose rights may have been violated as a consequence of having performed work for which they have not been compensated. The plaintiff should not be faulted for doing what he is required to do by law.
Still, the argument can fairly be made that, lacking adequate records, the court must inevitably speculate in reaching a determination as to what amounts are owed. Justice Murphy, inAnderson, cogently responds to this claim. He also sets out a formulation for the court to follow, noted above.
Therefore, with respect to Jose Irizzary, in consideration of the full record, I conclude that plaintiff has proved that he performed work for which he was improperly compensated and that he has produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. I conclude further that defendant has failed to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee s evidence. I also conclude that the record sufficiently supports plaintiff s evaluation of the amounts owed to Mr. Irizzary, even though the result is only approximate. Judgment shall enter on Count Two in favor of Mr. Irizzary in the amount sought, $3,638.36.
With respect to Mr. Vecchito, the evidence supporting plaintiff's claim is somewhat less persuasive. Nonetheless, applying the same logic indicated in the paragraph above, I conclude that plaintiff should prevail in the amount requested, $873.00.
Double Damages and Attorney's Fees
These requests raise a close issue. Viewed from one perspective, Mr. McIntosh's actions — particularly his refusal to permit Mrs. Cavagnaro to see his records when she CT Page 12651 appeared at his place of business, in violation of Sections31-59, 31-66 and 31-76a — are accurately characterized as uncooperative. See pages 13 through 16 of Plaintiff's Trial Brief On the other hand, the court is unaware of any authority for the proposition that unwillingness or refusal to cooperate with an investigation which could result in criminal prosecution, see Section 31-71g, as well as harsh civil penalties, in and of itself supports a finding of bad faith, arbitrariness or unreasonableness. The record reflects some cooperation, albeit grudging and half-hearted. It also indicates that defendant obtained counsel to contest aspects of the state s claims — something he had every right to do. Most significantly, the precise factors identified in Butler and Sansone as indicating bad faith, arbitrariness or unreasonableness are, in varying degrees, absent in this case. There was, prior to trial, a lack of documentation of the number of hours worked and lack of a written demand; these claims did not exist when Messrs. Irizzary and Vecchito left defendant's employ. Of course, as emphasized above, it is the employer's duty to keep records, a duty that was concededly breached here. Nonetheless, as defendant stresses. the plaintiff bears the initial burden of producing evidence concerning the number of hours worked.
In this case, relatively early on, regrettably, the parties got locked into a highly adversarial posture and had great difficulty resolving the disputes between them. which escalated. Under all the circumstances, and particularly in light of the factors identified in Butler and Sansone, I conclude that while the record provides some support for a finding of unreasonableness and thus an award of double damages, the record also contains information casting doubt on such a finding. Given the gravity of such a finding, and the fact that the plaintiff bears the burden of proving bad faith, I conclude that such a finding should be eschewed.
I also conclude, under all of the circumstances, that an award of attorney's fees is inappropriate.
Summary and Conclusion
For the reasons stated above, judgment shall enter for the plaintiff on Count Two in the amount of $3,638.00 and Count Five in the amount of $873.00, plus interest commencing with the last month for which wages were due. Sections 31-265, as incorporated by 31-68 and 31-72. CT Page 12652
Douglas S. Lavine Judge, Superior Court