SHAUN B. CASHMAN, COMMISSIONER OF LABOR *v.* TOWN OF TOLLAND*

Superior Court, Complex Litigation Docket at Middletown
File No. X04-CV-02-0103471S

* Affirmed. *Cashman v. Tolland*, 276 Conn. 12, 882 A.2d 1236 (2005).

Memorandum filed July 2, 2004

*Glenn A. Woods*, assistant attorney general, and *Richard Blumenthal*, attorney general, for the plaintiff.

*Diana Garfield* and *Miguel A. Escalera, Jr.*, for the defendant.

QUINN, J. The question these cross motions for summary judgment ask the court to determine is for what period of time, pursuant to General Statutes § 31-76b, a town must pay any employees who operate snowplows and are called back on duty from home after having left work at the end of their regular work schedule. Resolution of the dispute turns on the question of when, under these facts, such employees are notified of their work assignment. For the reasons the court will set forth in detail, given the facts and circumstances of this case, the court finds that the employees receive their work assignment, pursuant to the statute, when they actually report in for work, not when they are first contacted to report in for work. The court therefore renders summary judgment in favor of the defendant, the town of Tolland (town).

I

FACTS AND PROCEDURAL HISTORY

The plaintiff, Shaun B. Cashman, commissioner of labor (commissioner), brought this action pursuant to

General Statutes §§ 31-68[1] and 31-72[2] against the town to collect alleged unpaid wages on behalf of twenty-two town employees. The subject employees operate snowplows and perform other storm related work in the town.

The following facts are either undisputed or uncontradicted. The twenty-two town employees are governed by collective bargaining agreements between the town and the employees' respective unions. In the agreements, the town retains the right to manage and to determine work schedules. Further, the agreements provide that the employees are entitled to a minimum of four hours pay if called back on duty from home

[1] General Statutes § 31-68, entitled "Collection of minimum or overtime wage. Collection of wages for employee whose whereabouts are unknown," provides in relevant part: "(a) If any employee is paid by his employer less than the minimum fair wage or overtime wage to which he is entitled . . . he may recover, in a civil action, twice the full amount of such minimum wage less any amount actually paid to him by the employer, with costs and such reasonable attorney's fees as may be allowed by the court . . . . The [labor] commissioner may collect the full amount of unpaid minimum fair wages or unpaid overtime wages to which an employee is entitled . . . as well as interest calculated . . . from the date the wages should have been received, had they been paid in a timely manner. In addition, the commissioner may bring any legal action necessary to recover twice the full amount of the unpaid minimum fair wages or unpaid overtime wages to which the employee is entitled . . . and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. . . ."

[2] General Statutes § 31-72, entitled "Civil action to collect wage claim, fringe benefit claim or arbitration award," provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . . The Labor Commissioner may collect the full amount of any such unpaid wages . . . as well as interest calculated . . . from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages . . . and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. . . ."

after having left work at the conclusion of their regular schedule. Either the superintendent of the town's highway department or the working foreman contacts road crew employees by telephone if they are needed outside of their usual working hours. The supervisor of the parks and recreation department contacts employees in his department by telephone if they are needed outside of their usual working hours.

When employees are called, they are just told to "come in." The supervisors do not know who is available and able to report in until after they have gone through the entire employee list. There are a variety of job assignments. A schedule of those assignments is posted at the town garage or the employees are verbally told their assignments at the time they report in. It has been the town's policy to pay employees from the time they "punch in" until they complete their assignments when called in to work outside of their normal working hours. The statute applicable to "call in" procedures is § 31-76b.[3] That provision applies to public and private

[3] General Statutes § 31-76b, entitled "Overtime pay: Definitions," provides in relevant part: "(2) (A) 'Hours worked' include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer. (B) All time during which an employee is required to be on call for emergency service at a location designated by the employer shall be considered to be working time and shall be paid for as such, whether or not the employee is actually called upon to work. (C) When an employee is subject to call for emergency service but is not required to be at a location designated by the employer but is simply required to keep the employer informed as to the location at which he may be contacted, or when an employee is not specifically required by his employer to be subject to call but is contacted by his employer or on the employer's authorization directly or indirectly and assigned to duty, working time shall begin when the employee is notified of his assignment and shall end when the employee has completed his assignment . . . ."

employees. To the knowledge of the director of the wage and workplace standards division of the department of labor, there are no opinion letters, decisions or regulations interpreting § 31-76b.

The commissioner instituted this action to collect sums he claims are due the subject town employees from the time they received the call to report in until the time they completed their work. The town paid wages only from the time the employees "punched in" at the town facility until the time they completed their work. It is the difference in wages calculated from the time of the call to the time of "punching in" that the commissioner claims is due pursuant to § 31-76b. The commissioner concluded that the town owes its employees $16,219.80, and seeks double damages by authority of §§ 31-68 and 31-72, together with reasonable attorney's fees, costs and interest from the date the payments should have been received from the town. The commissioner additionally seeks civil penalties pursuant to General Statutes § 31-69a.[4]

The town, by motion for summary judgment dated March 4, 2004, seeks judgment in its favor, urging the court to construe § 31-76b to require payment from the time the town employees receive their assignment of duties after "punching in" rather than from the time they receive the telephone call to report in. The commissioner, by cross motion for summary judgment dated March 5, 2004, seeks judgment in his favor as to both

---

[4] General Statutes § 31-69a, entitled "Additional penalty," provides in relevant part: "In addition to the penalties provided in chapter 557, this chapter and chapter 568, any employer, officer, agent or other person who violates any provision of chapter 557, this chapter or subsection (g) of section 31-288, shall be liable to the Labor Department for a civil penalty of three hundred dollars for each violation of said chapters and for each violation of subsection (g) of section 31-288. The Attorney General, upon complaint of the Labor Commissioner, shall institute a civil action to recover such civil penalty. . . ."

liability and damages in the amount of $46,244.71 plus costs.

A hearing on both motions was held on April 14, 2004. For the reasons set forth, the court grants the town's motion for summary judgment and denies the commissioner's cross motion for summary judgment.

## II

## LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002); *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 351, 773 A.2d 906 (2001); *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 714, 735 A.2d 306 (1999); see Practice Book § 17-49.

The party moving for summary judgment bears the burden of proving the absence of a genuine dispute as to any material fact, and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. "Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996). "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 373 n.7, 746 A.2d 753 (2000); *D.H.R.*

*Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980).

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 201, 746 A.2d 730 (2000); *Serrano* v. *Burns*, 248 Conn. 419, 424, 727 A.2d 1276 (1999); *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 482, 784 A.2d 1024 (2000), on appeal after remand, 90 Conn. App. 727, 881 A.2d 386 (2005). In Connecticut, "[a] trial court should direct a verdict for a defendant if, viewing the evidence in the light most favorable to the plaintiff, [the trier of fact] could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail." (Internal quotation marks omitted.) *Colombo* v. *Stop & Shop Supermarket Co.*, 67 Conn. App. 62, 64, 787 A.2d 5 (2001), cert. denied, 259 Conn. 912, 789 A.2d 993 (2002).

## III

## DISCUSSION

The parties are in agreement as to the essential facts of this case; there are no material facts in dispute. The issue to be determined by this court is the interpretation of § 31-76b, which is a question of law. "Statutory construction is a question of law . . . ." (Internal quotation marks omitted.) *Jupiter Realty Co.* v. *Board of Tax Review*, 242 Conn. 363, 367, 698 A.2d 312 (1997). "[T]he fundamental task of the court in engaging in the process of statutory interpretation . . . [is to] engag[e] in a reasoned search for the intention of the legislature, which [is] further defined as a reasoned search for the meaning of the statutory language as applied to the facts of [the] case . . . ." (Internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 562–63, 816 A.2d 562 (2003).

General Statutes § 31-76b provides in relevant part: "As used in sections 31-76b to 31-76j, inclusive . . . (2) (A) 'Hours worked' include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded unless the employee is required or permitted to work. Such time includes, but shall not be limited to, the time when an employee is required to wait on the premises while no work is provided by the employer. (B) All time during which an employee is required to be on call for emergency service at a location designated by the employer shall be considered to be working time and shall be paid for as such, whether or not the employee is actually called upon to work. (C) When an employee is subject to call for emergency service but is not required to be at a location designated by the employer but is simply required to keep the employer informed as to the location at which he may be contacted, or when an employee is not specifically required by his employer to be subject to call but is contacted by his employer or on the employer's authorization directly or indirectly and assigned to duty, *working time shall begin when the employee is notified of his assignment* and shall end when the employee has completed his assignment . . . ." (Emphasis added.)

The parties agree that the critical issue in this case is *when*, by using the principles of statutory construction, an employee is *notified of his assignment*. At that point in time, the employee is entitled to be paid wages. Is he notified of his assignment when his supervisor calls him to "come in," or is he notified of his assignment when he "punches in" at the town facility?

"In seeking to determine [the] meaning [of the statute], we look to the words of the statute itself, to the

legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Courchesne,* supra, 262 Conn. 544.[5] In looking to the words of the statute, there is no statutory definition of the phrase, "notified of his assignment," or any state regulations clarifying that issue.

A review of the legislative history is not helpful. There is only one statement by Representative George F. Murray, which is arguably of any assistance to the court: "Actually [the employee] goes on working overtime when the employer notifies him that he is to report for work." 12 H.R. Proc., Pt. 9, 1967 Sess., p. 3951. The statutory language is that working time begins when the employee is "notified of his assignment . . . ." General Statutes § 31-76b (2) (C). It is difficult to determine from that one sentence whether Representative Murray was merely trying to summarize the provision and equated notification of "reporting to work" with notification of "his assignment . . . ." General Statutes § 31-76b (2) (C). The court cannot come to a conclusion as to the intent of the legislature from that one ambiguous remark by Representative Murray.

As to the legislative policy the statute was designed to implement, it is true that our Supreme Court has declared that the statutes regulating and enforcing the payment of wages recognize the public policy ensuring employees the wages due them, that those statutes are remedial in nature and, therefore, are to be given a

---

[5] Although No. 03-154 of the 2003 Public Acts legislatively overruled that portion of *Courchesne* addressing the "plain meaning rule" of statutory interpretation, this is not a situation in which the text of the statute is so plain and unambiguous as to preclude consideration of other sources, in addition to the statutory language itself, in determining legislative intent.

liberal construction in favor of those whom the legislature intended to benefit, i.e., wage earners. See *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 704 A.2d 222 (1997); *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 651 A.2d 1286 (1995); *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 562 A.2d 7 (1989).

Nevertheless, there are other rules of statutory construction that cannot be ignored. "[S]tatutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation . . . ." *Peck* v. *Jacquemin*, 196 Conn. 53, 63, 491 A.2d 1043 (1985). "When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable and not one which leads to difficult and possibly bizarre results." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 462. It is presumed that the legislature has a purpose for every sentence, clause or phrase in the statute. *Winchester* v. *State Board of Labor Relations*, 175 Conn. 349, 355–56, 402 A.2d 332 (1978).

In reviewing § 31-76b (2) (A) as a whole, the general prefatory language in the first sentence defines "hours worked" to include "all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work . . . ." In the present case, the employees at issue are requesting payment for time spent readying themselves for work and traveling to their place of employment, in addition to the time spent on the employer's premises.

The statutory provision then continues to address certain "on call" situations that would also require payment for "hours worked." "Such time includes, but shall

not be limited to . . . (B) [a]ll time during which an employee is required to be on call for emergency service at a location designated by the employer . . . ." General Statutes § 31-76b (2). The parties agree that subparagraph (B) is not applicable to the facts of this case. Subparagraph (C) provides that "[w]hen an employee is subject to call for emergency service but is not required to be at a location designated by the employer but is simply required to keep the employer informed as to the location at which he may be *contacted*, or when an employee is not specifically required by his employer to be subject to call but is *contacted* by his employer or on the employer's authorization directly or indirectly and assigned to duty, working time shall begin when the employee is *notified of his assignment* and shall end when the employee has completed his assignment . . . ." (Emphasis added.) General Statutes § 31-76b (2) (C).

It is important to note that subparagraph (C), which the parties agree *is* the applicable provision, specifically refers to the employer *contacting* the employee to report for work, but that working time begins when the employee is *notified of his assignment*. The legislature, having previously used the word "contact" in that particular subparagraph, could have stated that working time begins when the employee is contacted. Instead, the legislature used totally different language so that working time begins when the employee is notified of his assignment. It must be presumed that the legislature intended that distinction.

Applying the statutory language at issue to the facts of this case, the documentation submitted indicates that the supervisor places a telephone call to the town employee, advising the employee to report for work after usual working hours. The supervisor does not know who will be available to report in until after having telephoned all of the employees on the employee list.

When the employee reports in, there is a schedule of assignments posted in the town garage or the employee is verbally told of his assignment. Those facts are not disputed by the commissioner. Under that factual scenario, the employees are not notified of their assignments until after they report for duty and "punch in." When initially contacted by telephone, they are simply told to "come in"; no notification of assignments is made at that time.

Furthermore, the commissioner's interpretation, i.e., that working time begins at the time the call is made by the supervisor to the employee, leads to "difficult and possibly bizarre results." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.,* supra, 243 Conn. 462. The subject employee may take a considerable period of time to ready himself for work, which would be "working time" even if the delay was unreasonable. The commissioner counters that argument by responding that the employee should only be compensated for a "reasonable" period of time that elapses from the time of the telephone call until the time the employee "punches in" at the town facility. What may be reasonable for one employee may not be reasonable for another, and neither the statutes nor regulations permit an employer to dictate exactly how much time is "reasonable" for an employee to get ready for and to travel to work. The difficulty in ascertaining a "reasonable" time in each instance militates against such an interpretation. The certainty of calculating work time from the time the employee "punches in" and is notified of his assignment is much more workable.

The commissioner's interpretation would discourage the town from giving as much notice as possible to its employees that they will be needed for work outside of the usual work hours. Instead of contacting an employee as soon as the need becomes apparent, it would be in the town's fiscal interest to call the

employee at the instant he or she is *required* and tell him or her to report in *immediately*. The courtesy of advising them ahead of time, if possible, would not be feasible.

## IV

## CONCLUSION

For the foregoing reasons, the court concludes that work time begins at the time the employee is notified of his assignment when he "punches in" at the town facility and not at the time he is first contacted by telephone by his supervisor to "come in." Accordingly, the court grants the town's motion for summary judgment and denies the commissioner's cross motion for summary judgment.